IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

A.G., an individual,  No. 3:17-cv-01414-HZ

          Plaintiff,

  v.

UNUM LIFE INSURANCE COMPANY  OPINION & ORDER
OF AMERICA, a Maine corporation,
as administrator of the Dickstein Shapiro LLP
Group Long Term Disability Plan,

          Defendant.

Arden J. Olson
Harrang Long Gary Rudnick, PC
360 E. 10th Avenue, Suite 300
Eugene, OR 97401-3273

    Attorney for Plaintiff

Robert B. Miller
Kilmer Voorhees & Laurick, PC
732 NW 19th Avenue
Portland, OR 97209

    Attorney for Defendant

1 – OPINION AND ORDER

HERNÁNDEZ, District Judge:

Plaintiff A.G. brings this Employee Retirement Income Security Act ("ERISA") action against Defendant Unum Life Insurance Company of America, contending that Defendant improperly denied Plaintiff's application for disability benefits. Defendant now moves to compel Plaintiff to indicate Plaintiff's full name, rather than Plaintiff's initials, in compliance with Federal Rule of Civil Procedure 10(a). I grant the motion.

BACKGROUND

Plaintiff was employed by Dickstein Shapiro LLP as an associate attorney, starting on September 24, 2012. Compl. ¶6, ECF 1. By November 27, 2013, Plaintiff had become totally disabled. *Id*. Plaintiff's physician ordered Plaintiff to cease work. *Id*. On December 1, 2013, Plaintiff stopped working as an attorney. *Id*. Since that time, Plaintiff has remained unemployed and under medical treatment. *Id*.

In 2016, Plaintiff filed a claim for long-term-disability ("LTD") benefits under Dickstein Shapiro LLP's Group Plan, which is administered by Defendant. *Id*. at ¶¶2, 17. On February 22, 2017, Defendant paid Plaintiff one month's benefit under the Plan while it completed its review of Plaintiff's claim. *Id*. at ¶21. The next day Defendant denied Plaintiff's claim. *Id*. at ¶22. Plaintiff pursued an administrative appeal, and on July 28, 2017, Defendant granted short-term-disability ("STD") benefits but denied LTD benefits. *Id*. at ¶¶23–25. On September 8, 2017, Plaintiff filed suit against Defendant, using only Plaintiff's initials, seeking recovery of LTD benefits, a declaration of continuing benefits, and fees and costs. *See* Compl. ¶¶30–62.

/ / /

/ / /

/ / /

DISCUSSION

I. Applicable Law

Rule 10(a) states that "[t]he title of the complaint must name all the parties[.]" However, many courts, including the Ninth Circuit, permit parties to proceed anonymously or under pseudonyms in special circumstances. *See, e.g., Doe v. Madison Sch. Dist. No. 321,* 147 F.3d 832, 833 n.1 (9th Cir. 1998), *vacated on other grounds,* 177 F.3d 789 (9th Cir. 1999) (en banc); *United States v. Doe,* 655 F.2d 920, 922 n.1 (9th Cir. 1981) ("*Doe II*") (using pseudonyms in opinion because appellant, a prison inmate, "faced a serious risk of bodily harm" if his role as a government witness were disclosed). The Ninth Circuit allows the use of pseudonyms only in the "unusual case" when nondisclosure of the party's identity "is necessary … to protect a person from harassment, injury, ridicule or personal embarrassment." *Does I thru XII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067–68 (9th Cir. 2000) (citing *Doe II* at 922 n.1). Generally, the question is whether the plaintiff's need for anonymity outweighs the prejudice to the opposing party and the public's interest in knowing the party's identity. *Id.* at 1068. The party seeking anonymity has the burden of proving it should be allowed to proceed anonymously. *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008).

Several circuits have examined the issue of allowing parties to proceed anonymously, and many have adopted some form of balancing test to determine under what circumstances the practice is appropriate. *See, e.g., Doe v. Megless*, 654 F.3d 404, 408–10 (3rd Cir. 2011) (adopting a nine-factor test, balancing six factors in favor of anonymity against three factors in favor of disclosure); *M.M. v. Zavaras* 139 F.3d 798, 803 (10th Cir. 1998) (adopting a test balancing the possible harm to the anonymous party against the public interest in favor of disclosure); *James v. Jacobsen*, 6 F.3d 233, 238–39 (4th Cir. 1993) (adopting a non-exhaustive

list of five factors, balancing those in favor of anonymity against the risk of prejudice to the defendant and the public interest); *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (listing three factors for "consideration" when balancing disclosure as customary practice against plaintiff's privacy concerns); *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981) (using three factors, later used by the Eleventh Circuit in *Doe v. Frank*, to balance a party's privacy against customary presumption of openness in judicial proceedings).

In *Advanced Textile,* the Ninth Circuit dictated its own factors for consideration by district courts in balancing the relative interests of the parties: 1) the severity of the threatened harm; 2) the reasonableness of the anonymous party's fears; 3) the anonymous party's vulnerability to such retaliation; 4) the precise prejudice at each stage of the proceedings to the opposing party, and whether the proceedings may be structured so as to mitigate that prejudice; and 5) whether the public interest would be best served by requiring that the litigants reveal their identities. 214 F.3d. at 1068.

The first two factors in *Advanced Textile* are the most important and should be considered together. *Doe v. Kamehameha Schs./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010). The Ninth Circuit continues to use the *Advanced Textile* test. *See Id.* at 1042. The district courts in the Ninth Circuit routinely apply the five-factor test to decide the issue of whether a party may proceed anonymously. *See, e.g., Doe v. UNUM Life Ins. Co. of Am.*, 164 F.Supp.3d 1140, 1143–47 (N.D.Cal. 2016); *Doe v. Lake Oswego School District*, No. 3:15–cv–00385–ST, 2015 WL 5023093, at *2–4 (D.Or. 2015); *Doe v. Amazon*, No. C11-1709MJP, 2011 WL 13073281, at *2–4 (W.D.Wa. 2011); *4 Exotic Dancers v. Spearmint Rhino*, No. CV 08-4038 ABC(SSx), 2009 WL 250054, at *1–3 (C.D.Cal. 2009).

Plaintiff urges the Court to adopt the nine-factor test used by the Third Circuit. Pl. Resp. 8–10, ECF 15 (explaining test in detail). The Court declines to do so. The Third Circuit opined that "[w]hile the courts of appeals have agreed that district courts should apply a balancing test, each case presents a slightly different list of factors for courts to consider." *Megless*, 654 F.3d at 408–09 (further stating "each court agrees that the purpose of the balancing test is to allow a district court to determine whether a litigant has a reasonable fear of severe harm that outweighs the public's interest in open litigation."). While the Third Circuit's statement of the law is not inconsistent with the Ninth Circuit's approach to this issue, this Court is bound by Ninth Circuit precedent. That precedent requires application of a five-factor test, not the nine-factor one used in *Megless*. To the extent that any particular factor overlaps with any of the five used by the Ninth Circuit, cases applying such a factor may be persuasive. However, this Court will apply the five-factor test as established in *Advanced Textile*.

II. Applying the Factors

    A. The Severity of the Threatened Harm

Plaintiff contends that should Plaintiff's name be associated with the medical records that will be filed to support Plaintiff's claim, and should Plaintiff ever be able to return to work in the legal field, there is a "clear and substantial risk" that potential legal employers would be unwilling to hire Plaintiff. Pl. Resp. 2. Defendant argues that when a plaintiff faces economic rather than physical harm, the harm must be extraordinary to justify granting anonymity, and that the harm Plaintiff describes is not sufficiently severe when compared to the harm faced by the plaintiffs in *Advanced Textile*.

The *Advanced Textile* plaintiffs were migrant workers who traveled from mainland China to work on the island of Saipan, where they surrendered their passports and worked under strict

conditions. 214 F.3d at 1064–65. They filed a Fair Labor Standards Act collective action against their employers. *Id.* at 1063. The court found that the plaintiffs were under severe threat of harm because they could be deported back to China for violating any of the many conditions of their work contracts, at which point they would be incarcerated. *Id*. at 1070–71. "While physical harm presents the paradigmatic case for allowing anonymity, extreme non-physical retaliation may also be sufficient." *Doe v. Amazon,* 2011 WL 13073281, at *3 (citing *Advanced Textile*, 214 F.3d at 1069). In *Doe v. Amazon,* an actress brought suit against Amazon, as owner of the database website IMDb.com, alleging it had misused her personal information and improperly disclosed her age on the website. *Id*. The plaintiff sought to proceed anonymously, arguing that should her name be associated with her age, she would be "blacklisted" in the industry, and never be able to work again. *Id*. *Amazon* held that "while the harms that Plaintiff fears—embarrassment, ridicule, and retaliation—may be serious, they do not rise to the level of severity required by the Ninth Circuit to permit a party [to] bring a case anonymously in federal court." *Id.*

In *Doe v. UNUM Life*, a lawyer sought anonymity due to the likelihood of harm to his reputation, arguing that because of his position in the legal community, other attorneys would be following the case closely and, even though he did not intend to pursue a future legal career, he might suffer harm. 164 F.Supp.3d at 1145. The court in *UNUM Life* found the plaintiff's argument unpersuasive, noting that there was no particular stigma associated with the plaintiff's work, and that he did not fear physical harm. *Id*. In another case where the plaintiffs seeking to proceed under pseudonyms feared "blacklisting," the plaintiffs argued that the nightclubs they worked in would collectively blacklist them for bringing a Fair Labor Standards Act suit. *4 Exotic Dancers*, 2009 WL 250054, at *2. The court held that the plaintiffs' fears, while

reasonable and severe, were not sufficiently severe to warrant pseudonymity, because the result was effectively that the dancers would "make less money than they would otherwise." *Id*.

Plaintiff here suffers no threat of physical harm as a result of an association with any particular medical condition, unlike the plaintiffs in *Advanced Textile*. Plaintiff's fear is based purely in the economic realm, where Plaintiff might not be able to get a job in the legal field if, at some unspecific point in the future, Plaintiff's past medical history becomes known to a prospective employer. This is akin to an argument that Plaintiff might be "blacklisted" in the legal industry. Thus, the facts here are more closely aligned to those in *Amazon*, *UNUM Life*, and *4 Exotic Dancers*, than in *Advanced Textile*. Considering the above-referenced cases, this Court finds that while this harm can be severe, it is not severe enough to weigh this factor in Plaintiff's favor.

B. The Reasonableness of the Fear of Harm

Plaintiff's fears of future harm assume the occurrence of a specific series of events: 1) Plaintiff sufficiently recovers to return to the practice of law; 2) Plaintiff actually seeks out legal work; 3) a potential legal employer discovers the medical information in this case; and 4) the potential employer refuses to hire Plaintiff based on this information. Plaintiff also argues that Plaintiff's mental disabilities will be "forever publicly associated with Plaintiff's present physical and cognitive limitation, in the very judicial databases that Plaintiff's potential employers and other professional connections use every day." Pl. Resp. 14. Plaintiff contends, and this Court has no reason to disbelieve, that Plaintiff's condition is improving and that Plaintiff wishes to return to the practice of law. Compl. ¶¶5, 6. However, the Court must still examine the reasonableness of the fear that a possible future employer might decide not to hire Plaintiff on the basis of Plaintiff's past cognitive disabilities.

*Advanced Textile* indicates that the alleged harm must be objectively reasonable. 214 F.3d at 1063, 1072 (holding that the plaintiffs established they had an objectively reasonable fear of extraordinarily severe retaliation; later discussing the relevant issue as whether a reasonable person would believe the feared threat would actively be carried out.). To judge the reasonableness of a plaintiff's fears, a court must consider the surrounding context. *Kamehameha*, 596 F.3d at 1044. In *Amazon*, the plaintiff's fears were supported by threatening and lewd messages she had received as a result of the lawsuit. 2011 WL 13073281, at *3. However, the court held that even in the face of those threats, the plaintiff's fears of future retaliation and blacklisting were not objectively reasonable. *Id*. In *Kamehameha*, the court also took note of the many threats the plaintiffs had been subject to, including online threats about "kill haole day,"[1] and the United States Attorney's serious reaction to them. 596 F.3d at 1044–45. Still, the court held they were not a sufficient basis for the plaintiffs' fears. *Id*. Here, examining the context of Plaintiff's alleged future harm, there are no supporting threats. Plaintiff fails to show that any prospective legal employer, or the community generally, is concerned about past cognitive disabilities of applicants. Plaintiff points to no evidence suggesting that this case is of particular note to the legal community. Plaintiff surmises that law firms are likely to reject her job application because of her medical condition. Plaintiff has no evidence that legal employers routinely search court docket sheets to obtain information about prospective hires. Plaintiff's fear of future harm is simply too speculative to be objectively reasonable.

C. The Anonymous Party's Vulnerability to the Feared Harm

Plaintiff has not made any particular arguments as to Plaintiff's increased vulnerability to potential harms. Defendant argues that Plaintiff is no more vulnerable than the normal plaintiff,

---

[1] *Kamehameha* dealt with the enrollment of non-native Hawaiians into a school that explicitly gave preferential acceptance to native Hawaiians. "Kill haole day" is an unofficial school practice where native Hawaiian students beat up non-native Hawaiians at the end of the school year. *See Kamehameha*, 596 F.3d at 1040 n.3, 1044–45.

especially when compared to the plaintiffs in a case such as *Advanced Textile*. The court in *Advanced Textile* found that the plaintiffs were uniquely vulnerable because they were not only employees of the defendants, but were also subject to the employers' power to deport them, at which point they might have been imprisoned in their home nation. 214 F.3d at 1073. In contrast to *Advanced Textile*, the plaintiff in *Amazon* was not uniquely vulnerable because she did not allege that the defendants intended to misuse her personal information, and because, despite the high profile nature of the case, she was not especially subject to retaliation.

Plaintiff is not, as Defendant notes, an unsophisticated foreign garment worker, sexual assault survivor, or a worker in a stigmatized field. This case is more analogous to *Amazon* than to *Advanced Textile*. Plaintiff has not made any showing that Plaintiff is uniquely vulnerable to suffer the alleged future harms.

D. The Prejudice Against the Opposing Party

Plaintiff argues that, if allowed to proceed anonymously, Defendant would not be prejudiced because Defendant already has "extensive records about every aspect of Plaintiff's condition, has blanket authorizations from Plaintiff to access medical records, and has the ability to update those authorizations at any time." Pl. Resp. 19. Defendant argues that, despite knowing the identity of Plaintiff, it would be harmed because it would not have the ability to publicly refute certain allegations about Defendant's business practices, and it may have difficulty during the discovery process. Defendant does not make clear what discovery issue it may have, given that it contends the only relevant evidence is the Administrative Record, which is in Defendant's possession. Def. Answer ¶¶10–29.

While Defendant accurately sums up the law when it states that merely showing the absence of prejudice to a defendant is insufficient for a plaintiff to meet his or her burden, its

argument here is unpersuasive otherwise. *Kamehameha*, 596 F.3d at 1043. Defendant is free to refute any allegations against it in this litigation. Plaintiff's allegations are confined to litigation documents, not broadcast publicly or online. There are no arguments Plaintiff is a public figure such that Plaintiff's allegations might reach a larger audience. Defendant makes no showing that Plaintiff proceeding by initials impairs its ability to defend against the allegations. This factor weighs in favor of Plaintiff.

      E. Whether the Public Interest Would be Best Served by Requiring Identification

Plaintiff argues that this case bears out no particular public interest, while Defendant contends that the "paramount importance of open courts" is sufficient to swing this factor in its favor. *Kamehameha*, 596 F.3d at 1046. While Defendant is correct that there is a public interest in open courts, the Ninth Circuit has recognized that the equally worthy public interest in cases proceeding and being decided on the merits may be aided by anonymity. As there is both the underlying presumption that parties should proceed under their true names, and the public interest in having cases proceed on their merits rather than be dismissed by a fearful plaintiff, as some plaintiffs have done, the public interest factor in this case is essentially balanced between the parties.

      F. Summary

Plaintiff fails to show that Plaintiff's allegations of future harm are severe enough to warrant proceeding anonymously, or that Plaintiff's fears are anything more than speculative. Despite the little or no prejudice that Defendant would suffer, after all the factors are considered, the balance favors Defendant.

/ / /

/ / /

III. Request to File the Administrative Record Under Seal

In Plaintiff's Response, Plaintiff requests that the Administrative Record be filed under seal. Pl. Resp. 21-22. Although Plaintiff indicates that the parties agreed that no separate motion on this issue is required, the Court declines to resolve the issue on the current briefing. If Plaintiff still requests that the Administrative Record be filed under seal, Plaintiff shall file a motion on this issue, limited to five pages or less, no later than one week from the date of this Opinion & Order. Defendant shall have one week to file a response, also limited to five pages or less. Plaintiff may file an optional reply one week from the filing of Defendant's response, limited to five pages or less. Defendant shall refrain from filing the Administrative Record until any motion to seal is resolved.

## CONCLUSION

Defendant's motion to compel [6] is granted. Plaintiff is directed to file an amended complaint with Plaintiff's full name within two weeks of the date of this opinion.

IT IS SO ORDERED.

Dated this 14 day of February, 2018.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge