**Arden J. Olson, OSB #870704**
arden.j.olson@harrang.com
HARRANG LONG GARY RUDNICK P.C
360 East 10th Avenue, Suite 300
Eugene, Oregon 97401
Telephone:    541-485-0220
Facsimile:    541-686-6564

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **ALISON GARY**, an individual,<br><br>    Plaintiff,<br><br>    vs.<br><br>**UNUM LIFE INSURANCE COMPANY OF AMERICA,** a Maine corporation, as administrator of the Dickstein Shapiro LLP Group Long Term Disability Plan,<br><br>    Defendant. | Case No. 3:17-cv-1414-HZ<br><br>**FIRST AMENDED COMPLAINT**<br>(ERISA) |

**PARTIES**

1.    Plaintiff Alison Gary ("Plaintiff") is a natural person residing in Clackamas County, Oregon. Plaintiff is a "participant" and "beneficiary" of the Dickstein Shapiro LLP Group Long Term Disability Plan as those terms are used for purposes of the Employee Retirement Income Security Act of 1974 ("ERISA").

2.    Defendant Unum Life Insurance Company of America ("Unum") is a Maine corporation, was the underwriter, and is the plan administrator during all times relevant to this

Page 1 – **FIRST AMENDED COMPLAINT**

lawsuit of the insured Dickstein Shapiro LLP Group Long Term Disability Plan (the "Plan"), which has the terms described by Unum Policy 37253 021 (the "Policy"), a copy of which is attached to this complaint as Exhibit 1.  The Plan was established and maintained by Dickstein Shapiro LLP, a law firm headquartered in Washington, D.C. ("Dickstein"), for the benefit of Dickstein's employees, and applies to Plaintiff as a result of Plaintiff's employment at Dickstein in its Washington, D.C. office.

## JURISDICTION AND VENUE

3. The matter in controversy is governed by ERISA, 29 U.S.C. § 1001 *et seq*.  This Court has jurisdiction under 29 U.S.C. § 1132(a)(1)(B), which authorizes a participant or beneficiary to bring suit to recover benefits due under the terms of a plan, pursuant to 29 U.S.C § 1132(e)(1).

4. Venue is proper in this Court pursuant to 29 U.S.C § 1132(e)(2), which provides that an action under 29 U.S.C. § 1132 may be brought in the district where the employee benefit plan is administered, where the breach took place, or where a defendant may be found.  Unum delivered benefits to Plaintiff under the Plan in this district, Unum delivered the adverse benefit decision which is the subject of this lawsuit in this district, and Unum is active as an insurance company doing business in this district, among other ways through its office maintained in Portland, Oregon.

## FACTUAL BACKGROUND

5. Plaintiff became employed by Dickstein as an associate attorney on September 24, 2012.  Plaintiff became totally disabled as a result of the illnesses and/or injuries described below, and Plaintiff was ordered by Plaintiff's physician on November 27, 2013, to cease practicing law, which Plaintiff did as of the next business day, December 1, 2013.  Plaintiff has not been able to practice law since that date, and Plaintiff continues today to be under medical orders barring Plaintiff from practicing law.

6. Unum was at the time the administrator of Dickstein's short-term disability plan, under which Plaintiff was also a participant and beneficiary. Plaintiff's claim for short-term disability benefits under the STD Plan was granted by Unum from November 27, 2013, until April 2014, when Unum retroactively denied Plaintiff's STD benefits as of February 10, 2014. The response of Plaintiff's treating internist, Alan Pocinki, M.D., a noted expert in joint hypermobility syndrome and Ehlers-Danlos syndrome ("EDS") practicing at George Washington University Hospital in Washington, D.C., to Unum's denial of those STD benefits was that it was "baffling, no, incomprehensible," a "truly unsupportable denial."

7. Although Plaintiff filed an appeal from the denial of further STD benefits, the usefulness of pursuing that appeal to litigation was overtaken by Plaintiff's chronic fatigue, by Plaintiff's need to focus on medical issues, and by the 180 day limit on those STD benefits. Unum's decision described below in paragraph 24 demonstrates that Unum's STD decision was without basis and was arbitrary when it was made.

8. Plaintiff presented to Dr. Pocinki on November 19, 2013, with concerns about Plaintiff's cognition that were affecting Plaintiff's work. Plaintiff had previously experienced certain joint issues related to EDS, Type III, but Dr. Pocinki's diagnosis at that time was "Atlanto-axial subluxation 721.1."

9. Dr. Pocinki referred Plaintiff for an MRI on Plaintiff's cervical spine, the results of which showed an abnormal angle, prompting his advice that Plaintiff could not continue Plaintiff's law practice, among other reasons because of the severe risk of injury to Plaintiff's spinal column from Plaintiff's unstable spine. Dr. Pocinki eventually determined that Plaintiff was suffering from cervicomedullary syndrome, a condition where pressure on the brain stem causes numerous and varied neurological problems, including in Plaintiff's case cognitive problems, weakness, impaired coordination, bladder problems, numbness, tingling, and other sensory disturbances. Plaintiff's ability to concentrate became very limited, such that reading was limited to less than an hour at a time. Plaintiff would have brief fainting spells, precipitated

Page 3 – **FIRST AMENDED COMPLAINT**

by a "pop" in the neck, which would cause Plaintiff suddenly to fall to the ground and lose consciousness.

10.     On December 9, 2013, Plaintiff was seen by Fraser Henderson, M.D., of the Metropolitan Neurosurgery Group in Chevy Chase, Maryland, who also diagnosed atlantoaxial instability and probable craniocervical instability, and fitted Plaintiff for a neck brace, suspecting "a mechanical etiology to some of [Plaintiff's] problems." The succeeding months involved multiple efforts to determine the cause(s) of Plaintiff's cognitive issues. In February 2014, Dr. Henderson prescribed aspirin, Lipitor, and bromelain for Plaintiff's "brain fog," which appeared to make some improvement in Plaintiff's mental status and memory, but did not cure the problems. Conservative treatment by Drs. Pocinki and Henderson for those symptoms, amounting to activity modification, physical therapy, drugs, and the neck brace, continued for most of a year.

11.     In mid-2014, Plaintiff discovered that Dickstein's long term disability program for its employees consisted of two LTD plans, the one underwritten by Unum covering 40% of a beneficiary's monthly earnings and another underwritten by Massachusetts Mutual Life Insurance Company ("Mass Mutual") covering another 40% of the beneficiary's monthly earnings. When Mass Mutual discovered that Plaintiff had become unable to work, it contacted Plaintiff directly by telephone to assist with Plaintiff's application for benefits, it collected all of Plaintiff's records, it approved Plaintiff's claim, and it has been paying Plaintiff monthly under that policy for disability, going back to the end of Plaintiff's 180 day "elimination period" following Plaintiff's November 2013 disability, as of May 2014 through today, without any need for administrative appeal or litigation. In due course, Mass Mutual sent a representative personally to interview Plaintiff in Oregon and to ensure that it had an accurate and a fair understanding of Plaintiff's situation. At all times relevant to Unum's LTD decisions at issue in this case, Unum knew of Mass Mutual's ongoing determination that Plaintiff was and is totally disabled.

12. On August 27, 2014, Dr. Henderson determined that conservative measures had not succeeded, although the neck brace helped to some degree, such that surgery to stabilize Plaintiff's neck was required to address Plaintiff's problems. In his preoperative evaluation, Dr. Pocinki noted that Plaintiff's neurological symptoms had worsened to the point that Plaintiff "forgets important things and has difficulty with simple arithmetic," had "trouble word-finding, often using the wrong words," and often "'spaces out' during conversations." He noted continuing upper extremity weakness, such that Plaintiff was "still unable to turn the faucets on in the shower or open or close food jars." Plaintiff was "unable to tolerate upright posture for very long," which Dr. Pocinki observed personally "when about 45 minutes into [Plaintiff's] appointment [Plaintiff] became very pale, [Plaintiff's] eyes glazed over and [Plaintiff] reported that the right side of [Plaintiff's] face was getting numb. … [O]nly after 5 minutes of lying down … was [Plaintiff] able to resume conversation at all, and then still not with a full level of alertness." Plaintiff was "able to walk [Plaintiff's] dog a couple of blocks, stopping often to rest, but that is the most - and only - strenuous activity [Plaintiff] can manage for the day." Dr. Pocinki concluded that Plaintiff had "significant neurological deficits, many and likely most of which appear to be related to cervical spine instability."

13. Plaintiff underwent a suboccipital decompression, reduction, and occipitoaxial fusion-stabilization surgery performed by Dr. Henderson on October 6, 2014. The surgery substantially improved the "brain fog," dysarthria, imbalance, clumsiness, weakness word finding problems, cognitive issues, and memory problems which had impeded Plaintiff's ability to perform as a lawyer. It increased Plaintiff's pain, however.

14. As soon after the surgery as Plaintiff could safely travel, having lost the job with Dickstein on account of Plaintiff's disability, Plaintiff traveled back to Plaintiff's birthplace in Oregon to recover. Plaintiff was referred for physical therapy. At that point Plaintiff was unable to sit for more than 20 minutes or to walk for more than 16 minutes.

15. The months following that time were almost all about trying to recover from the spinal surgery and to overcome the symptoms related to the underlying disease processes which required that surgery. Plaintiff was not able to drive an automobile for over 30 months since Plaintiff's disability arose, which is a job requirement for almost all attorney jobs, and Plaintiff became able to do so only in early August 2016 and only to the extent of a couple of miles from home during low traffic periods. (Plaintiff cannot today sit in an upright position for more than approximately two hours at a time.) Plaintiff has attempted to begin doing some desk work, but has been unable to find employment which Plaintiff could maintain. The only employment Plaintiff has had since November 2013 has been (1) limited freelance writing work for the Oregonian, for which Plaintiff was paid a total of approximately $500 (an opportunity that has been terminated), and (2) limited writing for an online magazine for which Plaintiff was paid a total of approximately $50.

16. Plaintiff's inability to concentrate, difficulty processing information, chronic and debilitating fatigue, and pain (particularly when sitting upright for any period of time) required that most of the period 2015 through today be focused on that which Plaintiff needed to recover medically and to find relief from pain. Plaintiff filed a claim with Unum for long term disability benefits under the Plan on September 1, 2016.

17. Plaintiff has continued under the care of Dr. Pocinki, and returned for re-evaluation by him and by Dr. Henderson in October 2016. Both doctors found that Plaintiff continued to have an active spinal cord injury resulting from Plaintiff's disabling condition. Both doctors at that time agreed that Plaintiff remained completely unable to work in Plaintiff's former capacity.

18. Dr. Henderson diagnosed the continuing issues at the C4-C5 level, likely due to instability of the spinal column. He also changed the neck brace Plaintiff had been wearing and anticipated that Plaintiff would need further surgery.

19. Dr. Pocinki agreed that there was still a problem at C4-C5, but was not persuaded that surgery would be required. He found extreme spasticity from Plaintiff's neck to ankles, noting that the thoracic spine was Plaintiff's only stable skeletal structure. He found Plaintiff's shoulders to be dislocated, and was unable to reset them due to muscle spasms. He noted that Plaintiff should increase Plaintiff's prescribed medication and ordered Plaintiff to work with a massage therapist on the muscle spasms and with a physical therapist on Plaintiff's posture. Plaintiff requested to be cleared to work, in any type of employment that Plaintiff might be able to handle, for three 4-hour shifts per week, and Dr. Pocinki declined, stating that any more than two 2-hour shifts per week would be detrimental to Plaintiff's health and to Plaintiff's prospects for rehabilitation.

20. On February 22, 2017, Unum paid Plaintiff one month's benefit under the Plan under reservation of rights while completing its review.

21. On February 23, 2017, Unum denied Plaintiff's claim, stating that "We have determined that [Plaintiff] was not disabled through the 180 day elimination period" and because Plaintiff "was not disabled through this period, according to the policy, benefits are not payable." For purposes of this complaint, this decision will be termed the "Initial Denial."

22. On June 8, 2017, Plaintiff submitted to Unum an administrative appeal of Unum's Initial Denial, explaining the facts stated above, noting that failure to satisfy the elimination period was the only basis that Unum had given for the Initial Denial, and addressing specifically and comprehensively why Unum's decision that Plaintiff had not been disabled from November 27, 2013, to May 25, 2014, was not reasonable based on the terms of the Plan and the facts and circumstances of Plaintiff's case.

23. The physical and cognitive demands of Plaintiff's job were detailed by Unum's vocational expert as follows:

> ***Physical Demands***
>
> *Sedentary Work*  Exerting up to 10 pounds of force occasionally and/or a negligible amount of force to lift, carry, push, pull, or otherwise move

Page 7 – **FIRST AMENDED COMPLAINT**

> objects, including the human body.  Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time.
>
> *Cognitive Demands*
>
> *Directing, Controlling, or Planning Activities for Others:* Involves accepting responsibility for formulating plans, designs, practices, policies, methods, regulations, and procedures for operations or projects; negotiating with individuals or groups for agreements or contracts; and supervising subordinate workers to implement plans and control activities.
>
> *Influencing People in their Opinions, Attitudes, & Judgments*: Involves writing, demonstrating, or speaking to persuade and motivate people to change their attitudes or opinions, participate in a particular activity, or purchase a specific commodity or service.
>
> *Performing a Variety of Duties*: Involves frequent changes of tasks involving different aptitudes, technologies, techniques, procedures, working conditions, physical demands, or degrees of attentiveness without loss of efficiency or composure. The involvement of the worker in two or more fields may be a clue that this temperament is required.
>
> *Dealing with People*:  Involves interpersonal relationships in job situations beyond receiving work instructions.
>
> *Making Judgments and Decisions*:  Involves solving problems, making evaluations, or reaching conclusions based on subjective or objective criteria, such as the five senses, knowledge, past experiences, or quantifiable or factual data.
>
> *Definitions of Frequency*:
> `Occasionally'= Activity or condition exists up to 1/3 of the time (0 - 2.5 hours a day in an 8-hour workday)
> `Frequently' = Activity or condition exists from 1/3 to 2/3 of the time (2.5 - 5.5 hours a day in an 8-hour workday)
> `Constantly' = Activity or condition exists 2/3 or more of the time (5.5+ hours a day in an 8-hour workday)

Each of "sedentary work," "directing, controlling, or planning activities for others," "influencing people in their opinions, attitudes, & judgments," "performing a variety of duties," "dealing with people," and "making judgments and decisions" (as those terms are defined above) constituted a material and substantial duty of Plaintiff's regular occupation.

24. On July 28, 2017, Unum reversed its decision that Plaintiff was not disabled through the elimination period, granting Plaintiff benefits from May 26, 2014, through April 6, 2015.  Unum however now relies on a new basis for denial, not articulated in its original decision, denying Plaintiff benefits following April 6, 2015, on the basis that Plaintiff after that

date "was able to perform the duties of [Plaintiff's] regular occupation and no longer met the definition of disability in the policies" (the "Final Decision"). The articulated basis for the Final Decision was that Unum referred the matter to a new orthosurgeon who concluded that "given the operative procedure in October 2014, an instrumented fusion at the C1-2 level and non-instrumented at the occiput-C1, a six month recovery period is reasonable. This extends through April 6, 2015."

25. In making its Final Decision, Unum disregarded the opinions of both of Plaintiff's treating physicians that as of October 2016 Plaintiff continued to have an active spinal cord injury resulting from Plaintiff's disabling condition and remained completely unable to work in Plaintiff's former capacity. Unum also made a series of factual errors demonstrating the cursory and superficial nature of Unum's "paper review" of Plaintiff's medical records, including the contention that Plaintiff is taking NSAIDs as part of Plaintiff's pain management (Plaintiff cannot take NSAIDs), the contention that Plaintiff has no arthritis (which is false), and the contention that Plaintiff has no evidence of dysautonomia (Plaintiff has repeatedly been diagnosed with this condition). Although Unum took the position in its Initial Denial that it had not independently sought to obtain all of Plaintiff's medical records from Plaintiff's medical providers, Unum affirmatively declined a copy of those records from Dr. Henderson and when Unum formulated its Final Decision did not attempt to inquire of Dr. Pocinki or Dr. Henderson concerning the medical bases for their opinions that Plaintiff continued to be disabled, instead relying solely on physicians who never saw or treated Plaintiff.

26. The articulated rationale for Unum's Final Decision addressed only the first material and substantial duty of Plaintiff's profession, the ability to do "sedentary" activity. Unum's Final Decision offered no rationale to explain why, as of April 6, 2015, Plaintiff was deemed by it to have become capable of "directing, controlling, or planning activities for others," "influencing people in their opinions, attitudes, & judgments," "performing a variety of duties," "dealing with people," and "making judgments and decisions" as those terms are defined above.

Page 9 – **FIRST AMENDED COMPLAINT**

Unum's Final Decision was therefore not reasonable and based on the terms of the Plan and the facts and circumstances of Plaintiff's claim.

27.     The only remedy offered by Unum for responding to the Final Decision was, "If your client disagrees with this decision, you have a right to bring a civil suit under section 502(a) of the Employment Retirement Income Security Act of 1974." Because of Unum's last-minute reliance on a new ground for denying Plaintiff benefits, thereby affording Plaintiff no opportunity to present evidence on that question in advance of the administrator's Final Decision, Unum failed to adhere to the procedural dictates of ERISA.

28.     When Plaintiff was reevaluated by Dr. Pocinki on September 1, 2017, Dr. Pocinki determined that Plaintiff continues to suffer disabling pain, to suffer cognitive disability (having trouble processing complex questions and word finding), to lack the stamina necessary to perform the duties of an attorney (including "exerting up to 10 pounds of force," sitting for prolonged periods, sustaining cognitive activity, making decisions, and analyzing problems), and to suffer from autonomic dysfunction (losing concentration and becoming dizzy after sitting 45 minutes). Dr. Pocinki's conclusion based on his five-year history of treating Plaintiff, was that he "can say with reasonable medical certainty that [Plaintiff] is not able, and has not been able at any time from April 2015 to the present, to meet the physical and cognitive demands" of Plaintiff's occupation. Dr. Pocinki's assessment is that Unum's conclusion that:

> The examination findings, diagnostic testing and imaging, intensity and frequency of treatment, and [Plaintiff's] activities are not consistent with severe ongoing impairment

made "no sense at all" because "[t]he examination findings and diagnostic testing are entirely consistent with [Plaintiff's] symptoms and degree of impairment, as are the limitations in [Plaintiff's] activities," and that Unum's conclusion about intensity and frequency of treatment "bespeaks complete ignorance of the nature of EDS, as severely disabled EDS patients (like [Plaintiff]) are generally unable to tolerate frequent or intense treatments of any kind."

Page 10 –    **FIRST AMENDED COMPLAINT**

**FIRST CLAIM FOR RELIEF**
**(Benefits: 29 U.S.C. § 1132(a)(1)(B))**

29. Plaintiff realleges paragraphs 1 through 28 above.

30. The test for "disability" under the Plan is when:

    due to [Plaintiff's] **sickness** or **injury**:

    1. [Plaintiff is] unable to perform the **material and substantial duties** of [Plaintiff's] **regular occupation** and [is] not working in [Plaintiff's] regular occupation or any other occupation

    or,

    2. [Plaintiff is] unable to perform one or more of the material and substantial duties of [Plaintiff's] regular occupation, and [Plaintiff has] a 20% or more loss in [Plaintiff's] **indexed monthly earnings** while working in [Plaintiff's] regular occupation or in any occupation.

(Bolded emphasis in original.)

31. Under the terms of the Plan, although the Plan purports to give Unum discretionary authority to make benefit determinations, the Plan qualifies that authority by requiring that "all benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim." This Court is therefore empowered by the terms of the Plan to review the reasonableness of Unum's decisions and to review whether those decisions were based fairly on the terms of the Plan and on the facts and circumstances of this case.

32. Plaintiff is now, and has been at all times since November 27, 2013, unable to perform the material and substantial duties of Plaintiff's regular occupation, and is not working in Plaintiff's regular occupation or any other occupation.

33. Plaintiff is now, and has been at all times since November 27, 2013, unable to perform one or more of the material and substantial duties of Plaintiff's regular occupation, and Plaintiff has experienced a 20% or more loss in Plaintiff's indexed monthly earnings while working in any occupation.

Page 11 –    **FIRST AMENDED COMPLAINT**

34. Because Unum added, in its final decision, an entirely different basis for denying Plaintiff's claim than the one adjudicated in the administrative process, precluding Plaintiff from responding to that rationale for denial at the administrative level, this Court must under *Abatie v. Alta Health & Life Ins. Co.,* 458 F.3d 955 (2006), consider evidence outside the administrative record relevant to Unum's new basis for denial, that Plaintiff became fully capable of performing the duties of Plaintiff's profession on April 6, 2015.

35. Unum acted under the influence of the structural conflict of interest that Unum is here both the administrator and the only interested party, Unum failed to follow ERISA's procedural dictates, Unum gave inconsistent reasons for denial in this case, Unum made its decision based on a cursory and superficial paper review, Unum failed adequately to investigate whether Plaintiff was in fact disabled on April 6, 2015, Unum failed to acknowledge or to credit Plaintiff's reliable evidence from Plaintiff's treating physician that controverted Unum's decision, and Unum has a history of making decisions against the weight of evidence in the record. Based on those facts, this Court should review Unum's denial *de novo*, and without any deference to Unum's decision.

36. Unum's denial on one factual ground and subsequent change to a different basis for denial when confronted with irrefutable evidence that the basis for the initial denial was clearly incorrect demonstrates a predisposition to deny regardless of the actual merits of the claim and demonstrates that Unum's action was arbitrary and capricious.

## SECOND CLAIM FOR RELIEF
**(Federal Common Law under 29 U.S.C. § 1133)**

37. Plaintiff realleges paragraphs 1 through 36 above.

38. Under 29 U.S.C. § 1133, the Secretary was empowered to adopt regulations to ensure that any employee welfare benefit plan will:

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific

Page 12 –    **FIRST AMENDED COMPLAINT**

reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim.

39. The Secretary has adopted such regulations at 29 C.F.R. § 2560.503-1, which states that participant's claim fails the "full and fair review" test unless the participant is provided "the opportunity to submit written comments, documents, records, and other information related to the claim for benefits."

40. The "full and fair review" standard cannot encompass Unum telling Plaintiff it was denying Plaintiff's claim because Plaintiff did not satisfy the initial 180 day elimination period, reversing its decision on that basis to grant benefits because the evidence could not sustain it, and then turning around and terminating Plaintiff's benefits for an entirely different and theretofore unmentioned reason, without affording Plaintiff the opportunity to respond to the second, determinative reason for the termination.

41. Having been awarded benefits for the period November 27, 2013, through April 6, 2015, Plaintiff has an enforceable expectation under federal common law of continued disability payments until they are terminated by lawful procedures by Unum demonstrating significant changed circumstances to justify the change.

42. This Court should therefore retroactively reinstate Plaintiff's benefits beginning from the invalid termination as of April 6, 2015, to the date of judgment in this matter.

### THIRD CLAIM FOR RELIEF
### (Declaration as to Future Benefits: 29 U.S.C. § 1132(a)(1)(B))

43. Plaintiff realleges paragraphs 1 through 42 above.

44. Under 29 U.S.C. § 1132(a)(1)(B), Plaintiff is entitled to clarification of Plaintiff's rights to future benefits under the Plan.

Page 13 –   **FIRST AMENDED COMPLAINT**

45. Plaintiff asks this Court to declare that Plaintiff's benefits under the Plan shall continue until such time in the future, if any, as Unum validly terminates Plaintiff's benefits by demonstrating that Plaintiff is no longer disabled under the terms of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

1. Award Plaintiff under Plaintiff's First and Second Claims for Relief benefits for total disability under the terms of the Plan, at $5,333 per month, from April 6, 2015, to the date of judgment in this case;

2. Declare under Plaintiff's Third Claim for Relief that Plaintiff's benefits under the Plan shall continue until such time in the future, if any, as Unum validly terminates Plaintiff's benefits by demonstrating that Plaintiff is no longer disabled under the terms of the Plan;

3. Require Unum to pay Plaintiff a reasonable attorney fee pursuant to 29 U.S.C. § 1132(g), plus costs and prejudgment interest from April 6, 2015, until the date of judgment; and

4. Award Plaintiff such other and further relief as may be just and equitable in the circumstances.

DATED this 19th day of February, 2018.

HARRANG LONG GARY RUDNICK P.C.


By: ____s/ Arden J. Olson____
Arden J. Olson, OSB #870704
arden.j.olson@harrang.com
Telephone:   541-485-0220
Facsimile:   541-686-6564

Of Attorneys for Plaintiff

Page 14 –   **FIRST AMENDED COMPLAINT**

## CERTIFICATE OF SERVICE

I certify that on February 19, 2018, I served or caused to be served a true and complete copy of the foregoing **FIRST AMENDED COMPLAINT** on the party or parties listed below as follows:

☑ Via CM / ECF Filing
☐ Via First Class Mail, Postage Prepaid
☐ Via Email
☐ Via Personal Delivery

Robert B. Miller
Kilmer Voorhees & Lauarick PC
732 NW 19th Ave.
Portland, OR  97209
bobmiller@kilmerlaw.com

Of Attorneys for Defendant

HARRANG LONG GARY RUDNICK P.C.


By:      s/ Arden J. Olson
   Arden J. Olson, OSB #870704
   arden.j.olson@harrang.com
   Telephone:   541-485-0220
   Facsimile:    541-686-6564

Of Attorneys for Plaintiff

01005147.v2

Page 15 –    **FIRST AMENDED COMPLAINT**