IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALISON GARY, an individual,                           No. 3:17-cv-01414-HZ

        Plaintiff,

   v.

UNUM LIFE INSURANCE COMPANY                           OPINION & ORDER
OF AMERICA, a Maine corporation, as
administrator of the Dickstein Shapiro LLP
Group Long Term Disability Plan,

        Defendant.

Arden J. Olson
HARRANG LONG GARY RUDNICK P.C.
360 East 10th Avenue, Suite 300
Eugene, Oregon 97401

        Attorney for Plaintiff

Robert B. Miller
KILMER, VOORHEES & LAURICK, P.C.
732 N.W. 19th Avenue
Portland, Oregon 97209-1302

        Attorney for Defendant

HERNANDEZ, District Judge:

Plaintiff Alison Gary brings this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 (ERISA), alleging that Defendant Unum Life Insurance Company of America wrongfully denied her application for long-term disability benefits. Plaintiff moves for summary judgment on her second claim for relief contending that Defendant violated her right to a "full and fair review" of the denial under 29 U.S.C. § 1133 and its implementing regulation, 29 C.F.R. § 2560.503-1. She seeks the retroactive reinstatement of long-term disability benefits from April 6, 2015 to the date of judgment in this case. I grant the motion in part and deny it in part. I agree with Plaintiff that Defendant violated § 1133 but I find that a retroactive reinstatement of benefits is not the appropriate remedy.

BACKGROUND

In September 2012, Plaintiff became employed as an attorney at Dickstein Shapiro LLP. First Am. Compl. ¶ 5, ECF 24. Dickstein Shapiro has a Group Long Term Disability Plan administered by Defendant. *Id.* ¶¶ 1, 2. Plaintiff asserts that she became totally disabled and that her physician ordered her to cease practicing law on November 27, 2013. *Id.* ¶ 5. She stopped practicing law the next business day, December 1, 2013, and alleges that she has been unable to practice law since that date. *Id.*

On September 1, 2016, Plaintiff filed a claim for long-term disability (LTD) benefits with Defendant, seeking benefits since the November 27, 2013 disability onset date. Olson Nov. 30, 2017 Decl. ¶ 1, ECF 10. In seeking LTD benefits, Plaintiff noted that she "is, and was at all times from the beginning" of her eligibility, "disabled under the terms of the policy." Miller Jan. 5, 2018 Decl., Ex. 1 at 1, ECF 20-1. She asserted that she became disabled one year after she

began working at Dickstein Shapiro, and "continues to remain unable to work as an attorney[.]" *Id.*, Ex. 1 at 2.  She recited several facts about her impairments and treatment from November 2013 through October 2016 and in conclusion asserted that she "is and has continuously since November 2013 been completely disabled under the terms of the LTD Plan." *Id.*, Ex. 1 at 5.  She also included more than sixty pages of medical records.  *Id.*, Ex. 1 at 6-69.

Defendant initially responded with a request for additional information and a one month payment of benefits under a reservation of rights.  Olson Nov. 30, 2017 Decl. ¶ 3 & Ex. 1, ECF 10-1.  Then, on February 24, 2017, Defendant sent a letter to Plaintiff denying her claim ("the February 24, 2017 decision letter" or "the Initial Denial").  *Id.* ¶ 4 & Ex. 2[1], ECF 10-2.  In the section entitled "Decision/Reason," Defendant wrote:  "We have determined your client was not disabled through the 180 day elimination period.  Because [Plaintiff] was not disabled through this period, according to the policy, benefits are not payable." *Id.*, Ex. 2 at 1.  Defendant's February 24, 2017 decision letter included two single-spaced pages under the heading "Information That Supports Our Decision," discussing the evidence Defendant reviewed in assessing Plaintiff's claim.  *Id.*, Ex. 2 at 2-4.  First, Defendant explained that the policy has a 180-day elimination period during which time the claimant must be continuously disabled in order to receive disability benefits.  *Id.*, Ex. 2 at 2.  In this case, the elimination period began on November 27, 2013 and ended May 25, 2014.  *Id.*  Next, Defendant cited to various medical records provided by Plaintiff.  *Id.*, Ex. 2 at 2-4.  Following that, Defendant provided relevant policy provisions for defining disability, the elimination period, and termination of coverage.  *Id.*,

---

[1] Defendant sent a second letter that same date to include a paragraph inadvertently omitted from the February 24, 2017 decision letter.  Olson Nov. 30, 2017 Decl., Ex. 2 at 8.

Ex. 2 at 4-5. Finally, the February 24, 2017 decision letter included an explanation of Plaintiff's right to appeal, how to pursue an internal appeal, and if necessary, the right to file an ERISA action in court. *Id.*, Ex. 2 at 6-7.

Plaintiff filed her administrative appeal on June 8, 2017. Olson Nov. 30, 2017 Decl. ¶ 5. In support, she submitted a fifty-one page, mostly single-spaced letter, along with thirty-two exhibits totaling more than two hundred pages. Miller Jan. 5, 2018 Decl. ¶ 3 & Ex. 2, ECF 20-2.

Defendant responded to the appeal in a July 26, 2017 letter ("the Final Decision."). Olson Nov. 30, 2017 Decl. ¶ 6 & Ex. 3, ECF 10-3. The Final Decision explained Defendant's "Appeal Decision" as follows:

> On appeal, we have determined [Plaintiff] was disabled from Nov. 27, 2013, through April 6, 2015. We are approving LTD benefit payments for that period.
>
> After April 6, 2015, we have concluded [Plaintiff] was able to perform the duties of [her] regulation occupation and no longer met the definition of disability in the policies.

*Id.*, Ex. 3 at 2. The Final Decision included a several page, single-spaced section with information supporting Defendant's decision, followed by applicable policy provisions including the definition of disability. *Id.*, Ex. 3 at 2-9. It also explained that if Plaintiff disagreed with the decision, she could file a civil ERISA suit. *Id.*, Ex. 3 at 10. No right to an internal review was mentioned. This lawsuit followed.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and

identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

I. Applicable ERISA Statute & Regulation

ERISA imposes various obligations on employee benefit plans, including prescribing certain claim procedure requirements. Section 1133 provides that "[i]n accordance with

regulations of the Secretary, every employee benefit plan shall":

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

Pursuant to the authority conferred upon the Secretary of Labor in § 1133, several claims procedure regulations are found in 29 C.F.R. § 2560.503-1. Subsection (h)(4) addresses appeals of adverse benefit determinations for disability benefit plans. It states:

> The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with [previously recited regulations], the claims procedures -

> * * *

> (ii) Provide that, before the plan can issue an adverse benefit determination on review on a disability benefit claim based on a new or additional rationale, the plan administrator shall provide the claimant, free of charge, with the rationale; the rationale must be provided as soon as possible and sufficiently in advance of the date on which the notice of adverse benefit determination on review is required to be provided under paragraph (i) of this section to give the claimant a reasonable opportunity to respond prior to that date.

29 C.F.R. § 2560.503-1(h)(4).

II. Discussion

Plaintiff argues that because the Initial Denial concluded that she had not been continuously disabled through the 180-day elimination period and the Final Decision concluded

that she was disabled for a finite period of time which extended beyond the elimination period, but not disabled thereafter, the Final Decision set forth a new or additional rationale for the denial. Further, because the Final Decision did not provide for an internal review of that denial, Defendant violated § 1133 and § 2560.503-1(h)(4) by not giving her the opportunity for a "full and fair" internal review of the decision. Additionally, as a remedy for this violation, Plaintiff seeks an order retroactively reinstating LTD benefits from April 6, 2015 to the date of judgment in this case. Her theory is that because the Final Decision allowed benefits, the Final Decision's denial of benefits beginning April 6, 2015 was a termination of benefits and similar cases have required retroactive reinstatement of benefits pending correction by the plan administrator of the procedural violation.

A. New or Additional Rationale

In a 2006 case, the Ninth Circuit overruled an earlier decision regarding the standard of review to be used by district courts when reviewing decisions by ERISA plan administrators. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc). The majority of the court's decision explained when an abuse of discretion review standard is used instead of a *de novo* standard, and how the abuse of discretion review standard is applied in the face of conflicts of interest which arise when an ERISA plan administrator is also the plan fiduciary. *Id.* at 958-71. The court then discussed what standard of review should be used when the administrator fails to follow procedural requirements, distinguishing between decisions in which the administrator "engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan," and "the more ordinary situation in which a plan administrator has exercised discretion but, in doing so, has

made procedural errors." *Id.* at 971-73.

In the former situation, the standard of review is *de novo* because decisions reached under "wholesale and flagrant" procedural violations are not properly viewed as an exercise of an administrator's discretion. *Id.* at 971-72. In the latter situation where the administrator has exercised discretion but committed procedural errors which affect the administrative review, abuse of discretion review applies but the court "should reconsider the denial of benefits after the plan participant has been given the opportunity to submit additional evidence." *Id.* at 973 (internal quotation marks and brackets omitted). Thus, "when procedural irregularities are smaller, . . . the court may take additional evidence when the irregularities have prevented full development of the administrative record." *Id.* By doing so, the court, "in essence, recreate[s] what the administrative record would have been had the procedure been correct." *Id.*

The facts in *Abatie* involved a life insurance claim against an employer-sponsored plan administrator. After the insured's death, the insured's widow filed a claim for the life insurance benefit. The defendant initially denied the claim because the proper form to continue the insured's life insurance benefit eligibility had not been filed while he was on disability before he died. The plaintiff sued and during discovery, the parties found evidence suggesting that the form had in fact been filed. The parties then agreed to allow the defendant to conduct an additional review of the claim and render a final determination of the claim instead of proceeding directly to trial. After the review, the defendant again denied the life insurance claim. It concluded that the evidence purportedly showing that the correct form had been filed was insufficient. And, in addition, for the first time, it denied payment because it determined that the insured had not remained totally disabled from the time the insured stopped working until his

death as required by the life insurance policy.

The parties then resumed litigation. The district court conducted a bench trial. The plaintiff produced a new declaration from the insured's treating physician regarding the issue of total disability. *Id.* at 961. The court declined to decide the factual issue regarding whether the form had been filed and it refused to consider the new physician declaration. *Id.* The district court concluded that the defendant did not abuse its discretion in denying the claim. *Id.*

The Ninth Circuit, as noted above, spent considerable time discussing the standard of review. Then, it addressed the district court's decision. *Id.* at 973-74. The Ninth Circuit concluded that the district court made three errors. The third error[2] concerned the district court's failure to consider what the Ninth Circuit determined were "procedural irregularities" by the defendant in processing the life insurance claim. *Id.* at 974. As explained by the Ninth Circuit:

> Alta originally denied Plaintiff's claim for life insurance benefits because it concluded that no waiver of premium application had been submitted on behalf of Dr. Abatie. Later, in its final denial of Plaintiff's claim, Alta continued to rely on that reason, but also added a second reason - that Plaintiff had provided insufficient evidence to show that Dr. Abatie had remained totally disabled from the time he left work at the Clinic until his death.

*Id.*

Citing both § 1133 and the implementing regulation § 2560.503-1, the court held that "[w]hen an administrator tacks on a new reason for denying benefits in a final decision, thereby precluding the plan participant from responding to that rationale for denial at the administrative level, the administrator violates ERISA's procedures." *Id.* The statute, according to the court,

---

[2] The first two errors, failure to examine the nature, extent, and effect of the defendant's conflict of interest on the decision-making process and failure to make all required findings of fact, are not relevant here.

9 - OPINION & ORDER

indicates that the specific reasons provided by the denial must be reviewed at the administrative level. *Id.* This allows for a statutorily required "full and fair review" of the decision. *Id.* An administrator which adds, in its final decision, a new reason for a denial, "contravenes the purpose of ERISA" by "insulating the rationale from review[.]" *Id.* This type of procedural violation, the court explained, "must be weighed by the district court in deciding whether Alta abused its discretion." *Id.*

Finally, the court noted that the plaintiff had presented the additional declaration evidence to establish that the insured had remained totally disabled during the relevant time. *Id.* The Ninth Circuit concluded that the district court erred by refusing to consider the additional evidence unless, upon remand, it first found that the plaintiff's claim was "doomed" by the failure to file the proper form. *Id.*

A post-*Abatie* decision reached a similar conclusion two years later. *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863 (9th Cir. 2008). This case concerned a long-term disability plan. The plaintiff's application for long-term disability benefits was initially accepted. *Id.* at 866. After about one year of paying benefits, the defendant told the plaintiff that she no longer met the plan's definition of disability. *Id.* It terminated her benefits. *Id.* After an unsuccessful internal appeal, she filed an ERISA suit in court. *Id.* After a bench trial on the administrative record, the district court concluded that the defendant had not abused its discretion in terminating the plaintiff's benefits. *Id.*

On appeal, after determining that the district court applied the wrong standard of review because it did not have the benefit of *Abatie* which was issued after the district court's decision, the Ninth Circuit considered the merits of the case. When the defendant initially terminated the

plaintiff's benefits, it told the plaintiff that the medical information no longer evidenced a

disability that prevented her from performing her job or occupation. *Id.* at 869. Thus, she did

not meet the definition of disability. *Id.* In her appeal, the plaintiff submitted a recent MRI and a

letter from her treating neurologist in an attempt to satisfy the insurer's demand for medical

evidence from the doctors treating her and objective medical information to support her inability

to perform her occupational duties. *Id.*

The defendant denied the appeal, explaining that the determination of disability is not

based on diagnoses but on functional ability supported by clinical evidence. *Id.* at 870. It also

stated that it was unclear what the plaintiff's neurologist used as a basis for his assessed

limitations as "we've not been furnished with a Functional Capacity Evaluation" that would

objectively show her current level of functional ability. *Id.*

The Ninth Circuit carefully reviewed the defendant's communications with the plaintiff

and its termination letter, finding many faults. *Id.* (noting that the defendant's communications

with the plaintiff and her doctors "are hardly a model of clarity" and "certainly do not explain 'in

a manner calculated to be understood by the claimant' what [the plaintiff] must do to perfect her

claim"; noting that its termination letter was "equally uninformative."). Relevant here is the error

by the defendant in failing to set forth the need for a Functional Capacity Evaluation in its initial

termination. *Id.* at 871. The court noted that by relying on the plaintiff's failure to supply this

evaluation in the appeal denial and not earlier, the defendant deprived the plaintiff of a fair

chance to present evidence on this point. *Id.* at 871-72 (also quoting *Abatie's* "new reason"

discussion and its references to § 1133).

Having concluded that the district court erred, the Ninth Circuit then provided "guidance"

for the district court on remand: "the district court must give Saffon an opportunity to present evidence on the one issue that was newly raised by MetLife in its denial letter - the results of a Functional Capacity Evaluation or other objective evidence of whether she is totally disabled under the terms of the Plan." *Id.* at 872. In a footnote, the court addressed the defendant's argument that Ninth Circuit precedent prevented the district court from hearing additional evidence. *Id.* at 872 n.2. The court noted cases holding as much, but then cited to *Abatie* for the proposition that when "procedural 'irregularities have prevented full development of the administrative record,'" the district court may take additional evidence. *Id.* (quoting *Abatie*, 458 F.3d at 973) (brackets omitted) (further noting that to the extent there was a contradiction in the caselaw, *Abatie*, a later en banc decision, controlled).

Both *Abatie* and *Saffon* addressed the "procedural irregularity" created when a plan administrator cited one reason in an initial denial or termination of a benefit, and then relied on a second, different reason when affirming the initial denial or termination on appeal. In a similar case from the Sixth Circuit, the defendant terminated the plaintiff's disability benefits after two years because of the plaintiff's failure to respond to the defendant's requests for information which the defendant had sent to the wrong address. *Wenner v. Sun Life Assur. Co. of Can.* 482 F.3d 878, 800 (6th Cir. 2007). The plaintiff somehow received the defendant's initial termination and timely appealed with submissions of the requested information. *Id.* On appeal, the defendant affirmed its termination but not for the reason it had initially asserted which was the failure to receive requested information. *Id.* Instead, the defendant relied on a new reason, which was its determination that the plaintiff was not disabled by his condition. *Id.* The court found that the defendant failed to substantially comply with § 1133 by terminating the plaintiff's

claim for one reason "and then turning around and terminating his benefits for an entirely different and theretofore unmentioned reason[.]" *Id.* at 882. The defendant's actions did not afford the plaintiff the opportunity to respond to the second reason for the termination and thus deprived the plaintiff of "a fair opportunity for review[.]" *Id.* (internal quotation marks omitted).

The crux of the issue in all three of these "new reason" cases is that the plaintiff is denied due process at the administrative level. Because the statute requires an internal review of any reason for a denial or termination of benefits, articulating a new or additional reason in a final decision violates that procedural requirement. Although the plaintiff can still file an ERISA claim in court, the court's review, absent a procedural violation, is typically limited to the administrative record. Thus, if the plaintiff is not afforded the statutory right of internal review for any and all reasons relied on by the insurer, the administrative record reviewed by a court is likely to be incomplete.

Defendant argues that the instant case is distinguishable from *Abatie*, *Saffon*, and *Wenner* because here, Defendant's Initial Denial and Final Decision both relied on the same determination and the same policy provisions. In both decisions, Defendant determined that Plaintiff was not disabled under the terms of the policy. Both decisions cited the same policy provision regarding how Defendant defines disability. Olson Nov. 30, 2017 Decl., Ex. 2 at 4-5; *Id.*, Ex. 3 at 9-11. Thus, Defendant argues, the facts here are distinct from cases where the first decision bears no relationship whatsoever to the final decision such as seen most apparently in *Abatie* and *Wenner*.

Defendant may be correct that those two cases are not squarely on point with the facts here. But, that does not make them inapposite. Moreover, *Saffon* involved facts where both

decisions by the insurer were based on a determination that the plaintiff had not met the definition of disability. Although the *Saffon* court focused on the insurer's failure to have previously told the plaintiff about the need for the functional capacity evaluation, the underlying determination was, as it is here, that the plaintiff was not disabled under the terms of the plan. Thus, *Saffon* is closer to the facts here.

In any event, the issue that concerned the courts in all three cases was that because the insurer asserted a new or additional reason for denial or termination in the second and final decision, the plaintiff in each case was denied a fair chance to present evidence to the insurer on that new or additional reason. A close look at the record here shows that even though Defendant relied on the same overall rationale of failing to meet the plan's disability definition and the same plan sections, its conduct did not allow Plaintiff the opportunity for a "full and fair review" by the plan administrator.

Defendant's Initial Denial clearly expressed that the sole reason it denied Plaintiff's claim for disability benefits was that she was "not disabled through the 180 day elimination period." Olson Nov. 30, 2017 Decl., Ex. 2 at 1. This language appears under the heading "Decision/Reason." *Id.* Defendant also wrote, to underscore its conclusion, that "[b]ecause [Plaintiff] *was not disabled through this period*, according to the policy, benefits are not payable." *Id.* (emphasis added). Defendant knew that Plaintiff was applying for continuing, ongoing disability benefits. But, it did not analyze her claim for any period after the initial 180 days.[3] The Initial Denial expressly related only to the 180-day elimination period.

---

[3] Defendant acknowledged that Plaintiff's October 2014 cervical fusion surgery would have prevented her from performing her regular occupation for approximately three months thereafter. *Id.*, Ex. 2 at 4. But, because she failed to show continuous disability through the 180-

In contrast, the Final Decision determined that she was not disabled as defined by the plan after April 6, 2015, an entirely different period of time than the November 2013 - May 2014 elimination period which was the basis for the Initial Denial. In the Final Decision, Defendant found Plaintiff disabled through the 180-day elimination period, and for a period of approximately ten and one-half months beyond that period. Thus, Plaintiff's disabled status during the elimination period was no longer an issue. Then, Defendant applied the same disability definition and policy provision as it did in its Initial Decision, but to a separate time period. Although the Initial Denial and the Final Decision both articulated a failure to establish disability under the plan terms as a reason, the determinations addressed completely distinct time periods. Thus, as in *Abatie*, *Saffon*, and *Wenner*, the second and Final Decision articulated a new or different reason than the reason given in the Initial Denial.

Additionally, I agree with Plaintiff that because the Initial Denial relied only on the discrete period of time from late November 2013 to late May 2014, Plaintiff's internal appeal was not focused on the period after May 25, 2014. Defendant is correct that in her June 2007 appeal of the Initial Decision, Plaintiff made arguments that she was disabled as of that appeal date and had been continually disabled since her onset date in November 2013. *E.g.*, Miller Jan. 5, 2018 Decl., Ex. 2 at 1 (noting that she was including as Exhibits 2-8, the medical information she believed was relevant to establishing her "*continuing disability*" as of the claim submitted in September 2016) (emphasis added); *Id.*, Ex. 2 at 1 n.1 (explaining that she offered evidence of

_____

day elimination period, Defendant stated she would have fallen out of coverage before the October 2014 surgery and thus would not be eligible for benefits at that time. *Id.* Although Defendant concedes that Plaintiff would have had a three-month period of disability under the plan terms, it nonetheless did not consider any ongoing disability because of its determination that she failed to show continuous disability during the 180-day elimination period.

her "*continuing* disability, believing Unum could not seriously disagree that [she] was totally disabled at least from November 27, 2013 . . . . through October 2014, when [she] had surgery on [her] neck[.]") (emphasis in original); *Id.*, Ex. 2 at 2 (arguing that when the evidence is viewed fully and fairly, it "unequivocally" establishes that she "not only is *today* 'disabled' (as that term is defined in the Plan), but that [she] was disabled throughout the Relevant Period.") (emphasis added).

But, Plaintiff made clear in her appeal that the "sole issue raised by the denial" was whether she was disabled during the relevant period, meaning the 180-day elimination period. *Id.*, Ex. 2 at 1-2. Her appeal letter frequently referred to the "relevant period." *Id.*, Ex. 2 at 38 ("The Evidence in This Record Clearly Demonstrates that [Plaintiff] was Disabled under the Terms of the Plan Throughout the Relevant Period."); *Id.* at 38, 42, 46, 49 (arguing that the only reasonable conclusion under either test for disability is that Plaintiff was disabled "from November 27, 2013 Through and Beyond the Relevant Period"). And, while she included records post-dating the elimination period, her focus was on showing that those records established disability during the 180-day period. Accordingly, the record shows that she responded specifically to the 180-day elimination period, the only reason Defendant gave for rejecting her claim in its Initial Denial. As a result, Defendant deprived Plaintiff of having a "full and fair" internal review by Defendant of the new reason given by Defendant in its Final Decision relating to the period of April 6, 2015 and thereafter.

B. Termination v. Denial

Although I agree with Plaintiff that Defendant violated § 1133 and its implementing regulation, I do not order the reinstatement of benefits requested by Plaintiff. Plaintiff interprets

the Final Decision as granting her benefits and then separately terminating those benefits effective April 6, 2015. She contends that when an insurer violates the claims procedure requirements of § 1133 in its termination of ongoing benefits, the appropriate remedy is to reinstate the benefits until the insurer complies with the statute and corrects the procedural violation.

The cases Plaintiff relies on are distinguishable. In *Grosz-Salomon v. Paul Revere Life Insurance Co.*, for example, the court addressed whether the defendant improperly terminated the plaintiff's disability benefits. 237 F.3d 1154, 1157 (9th Cir. 2001). The district court had concluded that the insurer abused its discretion in terminating benefits and as a remedy, it required payment of retroactive benefits from the termination date to the date of judgment. *Id.* at 158. After discussing the appropriate standard of review, the Ninth Circuit concluded that the *de novo* standard applied and thus the district court had used the wrong standard. *Id.* at 1162. But, because the error was not harmful to the plaintiff, meaning the district court had found for the plaintiff even under a more stringent standard of review, there was no basis for a reversal and remand. *Id.* The court then affirmed the award of retroactive benefits over the defendant's objection, because, the court concluded, retroactive reinstatement is appropriate where but for the insurer's "arbitrary and capricious conduct, the insured would have continued to receive the benefits[.]" *Id.* at 1163 (internal quotation marks and brackets omitted). Notably, *Grosz-Salomon* is *not* a "new reason" case. It had nothing to do with § 1133 or claim procedure violations. It was a garden variety ERISA case contending that the insurer's termination of benefits was wrongful. Upon finding that the insurer erred, the district court appropriately awarded retroactive benefits.

Another case cited by Plaintiff, *Pannebecker v. Liberty Life Assurance Co. of Boston*, is also not a "new reason" case and did not involve § 1133. 542 F.3d 1213 (9th Cir. 2008). There, the insurer had terminated the plaintiff's disability benefits after concluding that she was no longer disabled under the terms of the plan. *Id.* at 1215. The insurer denied her internal appeal. *Id.* at 1216. On appeal to the district court, the court concluded that the defendant had failed to construe the plan's terms correctly and remanded for compliance with the plan and identification of specific sedentary occupations the plan contended the plaintiff could perform. *Id.* On remand, the defendant reached the same conclusion that the plaintiff was not disabled. *Id.* at 1217. On appeal again to the district court, the district court affirmed the defendant's decision. *Id.* It also declined to award reinstatement of benefits during the remand period. *Id.*

The Ninth Circuit affirmed the district court's determination that the plaintiff was not disabled under the terms of the plan. *Id.* But, it concluded that the district court had abused its discretion in failing to order reinstated benefits for the period of remand. *Id.* at 1220-21. Relying on a Seventh Circuit case, the court recognized the distinction between the wrongful denial of an initial application for benefits and the wrongful termination of benefits. *Id.* at 1221 (citing *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775-76 (7th Cir. 2003)). When an initial denial of benefits results from the plan administrator's failure to properly apply plan provisions, the court remands to the administrator to apply plan terms properly in the first instance. *Id.* When a plan administrator "terminates continuing benefits as a result of arbitrary and capricious conduct," however, the claimant "should continue receiving benefits until the administrator properly applies the plan's provisions." *Id.* (citing *Grosz-Salomon*, 237 F.3d at 1163). Finally, the court was unimpressed with the defendant's argument that because

this was not a § 1133 case, an award of retroactive benefits was inappropriate. *Id.* at 1221. The court stated that whether the plan administrator abused its discretion based on substantive or procedural reasons did not matter when the plaintiff "was already receiving benefits," and but for the defendant's failure to apply the terms of the plan correctly, she would have continued receiving them. *Id.*

*Pannebecker* is notable for identifying the distinction between the initial denial of a benefit and the termination of an ongoing stream of benefits. *Pannebecker* does not stand for the global proposition that the remedy for all § 1133 violations is retroactive reinstatement of benefits. Rather, it endorses the idea that when a beneficiary is receiving ongoing benefits and but for the insurer's improper substantive or procedural conduct, a beneficiary would have *continued to receive ongoing* benefits, retroactive reinstatement may be appropriate.[4]

In the instant case, the parties offer competing characterizations of Defendant's Final Decision. In Plaintiff's view, the Final Decision comprised two separate actions: (1) an award of benefits commencing November 27, 2013 and ongoing; and (2) a termination of those ongoing benefits effective April 6, 2015. In Defendant's view, the Final Decision was one single action: an award of benefits for a discrete period of time. Neither party cites any cases addressing the same or similar facts and the Court has found none. But, considering all the facts surrounding the Final Decision, I agree with Defendant that its interpretation is the more reasonable one.

The Final Decision was one single action. In that one letter, Defendant reviewed Plaintiff's single claim that she was disabled during the elimination period (and beyond).

---

[4] Interestingly, even though such facts were presented in *Saffon*, the court did not instruct the district court to reinstate benefits but instead told it to allow new evidence.

Defendant had not previously issued a determination awarding benefits followed by a later determination ending those benefits. It had issued only the Initial Denial. As a result, Defendant's action is most reasonably understood as awarding a single, discrete time period of disability and not as awarding benefits and then independently and separately terminating them.

Moreover, at the time of the Final Decision, Plaintiff had not in fact been receiving benefits. Even if Plaintiff is correct that the Final Decision awarded her "ongoing" benefits instead of awarding benefits for a finite period of time, Plaintiff had yet to receive any benefits. This is notable because it is precisely the *ongoing receipt* of benefits that cases such as *Pannebecker* address when discussing the retroactive reinstatement of benefits. Where the beneficiary has an expectation of continuing benefits because of a previous award and has actually received those benefits, an insurer's later wrongful termination of such benefits because of a procedural "new reason" violation may justify a retroactive award. But here, because the benefit award was only for a discrete period of time *in the past*, Plaintiff had yet to receive any benefits and had no reasonable expectation of payment when what she considers to be a termination occurred.

Accordingly, Plaintiff's requested remedy of a retroactive reinstatement of benefits is unsupported by the facts in this case. Rather, as *Abatie* and *Saffon* both suggest, the appropriate remedy is to allow Plaintiff to supplement the record in this Court with evidence supporting her position that she remained disabled after April 6, 2015. The Court will schedule a telephone conference with counsel to discuss the filing of the existing Administrative Record[5] and any new

---

[5] Plaintiff's motion to allow the Administrative Record to be filed under seal, ECF 25, is pending and not yet fully briefed. The Administrative Record and any additional evidence is not to be filed until that motion is resolved.

evidence allowed as a result of this Opinion, and a case schedule.

CONCLUSION

Plaintiff's Motion for Summary Judgment as to Plaintiff's Second Claim for Relief [9] is granted as to the merits of the allegation that Defendant violated 29 U.S.C. § 1133 but is denied as to Plaintiff's requested remedy of retroactive reinstatement of benefits.

IT IS SO ORDERED.

Dated this _12_ day of _March_____, 2018

Marco A. Hernandez
United States District Judge