IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALISON GARY, an individual                    No. 3:17-cv-01414-HZ

               Plaintiff,                    OPINION & ORDER

     v.

UNUM LIFE INSURANCE COMPANY
OF AMERICA, a Maine Corporation, as
administrator of the Dickstein Shapiro LLP
Group Long Term Disability Plan,

               Defendant.

Arden J. Olson
HARRANG LONG GARY RUDNICK, PC
497 Oakway Road, Suite 380
Eugene, Oregon 97401

        Attorney for Plaintiff

Robert B. Miller
KILMER VOORHEES & LAURICK, PC
2701 NW Vaughn Street, Suite 780
Portland, Oregon 97210

        Attorney for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Alison Gary brought this ERISA action against Defendant Unum Insurance

Company. On remand from the Ninth Circuit Court of Appeals, this Court granted Plaintiff's

Motion for Summary Judgment because Defendant abused its discretion when it failed to provide

Plaintiff with long-term disability benefits. November 29, 2021, Opinion & Order, ECF 85.

Plaintiff now seeks a total fee award of $683,644.20 in attorney's fees and $171 in costs. For the

reasons explained below, Plaintiff's Motion for Attorney's fees is granted in part, and Plaintiff's

Bill of Costs is granted. Plaintiff is awarded $416,749.05 in attorney's fees and $171.00 in costs.

## DISCUSSION

This case comes before the Court on Plaintiff's Motion for Attorney Fees and Nontaxable

Expenses and Plaintiff's Bill of Costs. In her reply, Plaintiff withdrew her request for nontaxable

expenses. Reply Mot. Atty's Fees & Nontaxable Expenses ("Pl.'s Reply) 10, ECF 98. Plaintiff

seeks attorney's fees in the total amount of $683,644.20[1]:

| Name | Position | Hourly Rate |
|---|---|---|
| Arden J. Olson | Lead Counsel | $540 |
| Sharon A. Rudnick | Appellate Counsel | $550 |
| Susan Marmaduke | Appellate Counsel | $540 |
| Aaron Landau | Attorney | $410 |
| Aaron Crockett | Attorney | $290 |
| Julian Marrs | Attorney | $305 |
| Ginger Fullerton | Paralegal | $150[2] |

**Total Fees: $569,703.50**
**Requested Multiplier: 1.2**
**Total Amount Requested: $683,644.20**

---

[1] Second Supplemental Decl. Arden J. Olson ("Second Suppl. Olson Decl.") ¶ 3, ECF 100.
[2] Although Ms. Fullerton's current hourly rate is $190, Plaintiff asserts that a $150 hourly rate is reasonable for purposes of this motion.

## I.    Conferral Under Local Rule 7-1

As a preliminary matter, Defendant argues that Plaintiff failed to meaningfully confer regarding the fee petition, so the Court should either deny the motion outright or, alternatively, decline to award Plaintiff fees for preparing the motion for failing to confer. Def.'s Resp. Opp'n Pl.'s Mot. Att'ys Fees & Related Nontaxable Expenses ("Def.'s Resp.") 1, ECF 94. Local Rule 7-1 provides that the first paragraph of every motion must certify that "the parties made a good faith effort through person or telephone conferences to resolve the dispute and have been unable to do so," or "the opposing party willfully refused to confer." Plaintiff's motion did not provide such a certification, and while Plaintiff acknowledges in her reply that she "inadvertently omitted a LR 7.1 certification," she responds that she did not fail to confer.

The parties have submitted email exchanges that capture communication regarding this motion between Plaintiff's counsel, Arden Olson, and Defendant's counsel, Bob Miller. Declaration of Robert B. Miller ("Miller Decl.") Exs. 10, 11, ECF 95; Supplemental Declaration of Arden J. Olson ("Suppl. Olson Decl.") Exs. 4, 5, ECF 99. On December 14, 2021, Mr. Miller sent Mr. Olson an email concerning a proposed judgment, ending the email noting,

> "I struck the fee award from the proposed judgment as premature. I understand how the *Hummel* factors apply and that [Plaintiff] will file a motion for fees and costs. Unum is prepared to work with [Plaintiff], through counsel, on that claim to see if there is a resolution short of briefing."

Miller Decl. Ex. 2 at 2. Later that day, Mr. Olson responded,

> "We don't agree that there is any ambiguity on whether attorney fees will be awarded here, but we can save that issue for the petition we will be filing after entry of judgment, thus accepting your taking that out of this judgment and reserving it for the supplemental judgment on our motion."

Miller Decl. Ex. 10 at 1. The following day, Mr. Olson emailed Mr. Miller, indicating that Mr. Olson may "need to ask the court for a few more days to file our attorney fee and cost petition,

given staffing issues over the holidays." Suppl. Olson Decl. Ex. 4 at 7. The Motion for Attorney

Fees was filed on December 29, 2021, ECF 89, and the Motion for Bill of Costs was filed the

following day on December 30, 2021. ECF 91.

The Court finds that the parties did not fail to confer in this case. Although Plaintiff

acknowledges that there was clerical oversight in failing to attach a LR 7.1 certification in her

motion, the email exchanges between the parties demonstrate that Plaintiff's counsel conferred

with Defendant's counsel before Plaintiff filed the present motions. Importantly, in those email

exchanges, Mr. Miller indicated that he "underst[oo]d that [Plaintiff] will file a motion for fees

and costs." Thus, the Court turns to the merits of Plaintiff's motions.

## II.    Attorney's Fees

### A.    *Entitlement to Attorney's Fees*

In an ERISA action to recover unpaid disability benefits, "the court in its discretion may

allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

According to the Ninth Circuit, "[t]his section should be read broadly to mean that a plan

participant or beneficiary, if [s]he prevails in h[er] suit under § 1132 to enforce h[er] rights under

h[er] plan, should ordinarily recover an attorney's fee unless special circumstances would render

such an award unjust." *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984)

(internal quotations omitted).

"[A]fter determining a litigant has achieved some degree of success on the merits, district

courts must still consider the *Hummell* factors before exercising their discretion to award fees

under § 1132(g)(1)." *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121

(9th Cir. 2010) (citing *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980)). The

*Hummell* factors are: (1) the degree of the opposing parties' culpability or bad faith; (2) the

ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. *Hummell*, 634 F.2d at 453. "No one of the *Hummell* factors, however, is necessarily decisive, and some may not be pertinent in a given case." *Carpenters Southern California Administrative Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).

In this case, Defendant does not dispute that the *Hummell* factors support a fee award. *See* Def.'s Resp. 2. The Court agrees. As to the first *Hummell* factor, this Court previously held that Defendant abused its discretion in denying Plaintiff's long-term disability benefits. Opinion & Order, November 21, 2021, at 22, ECF 85. Second, Defendant does not dispute that it has the ability to satisfy an award of attorney's fees. *See* Def.'s Resp. 2. Third, although Plaintiff's claim did not seek to benefit other plan participants, "an award of fees may deter other insurers from failing to conduct an adequate investigation and from behaving unreasonably when terminating benefits." *Robertson v. Standard Ins. Co.*, 3:14-CV-01572-HZ, 2016 WL 406343, at *1 (D. Or. Jan. 31, 2016). Finally, both positions had merit, but Plaintiff's final Motion for Summary Judgment was ultimately granted. Accordingly, the Court concludes that Plaintiff is entitled to an award of attorney's fees and costs.

### B.    *Amount of Attorney's Fees*

The Ninth Circuit has "adopted the hybrid lodestar/multiplier approach used by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983), as the proper method for determining the amount of attorney's fees in ERISA actions." *Van*

*Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The lodestar/multiplier

approach consists of two parts:

> First, a court determines the "lodestar" amount by multiplying the number of
> hours reasonably expended on the litigation by a reasonable hourly rate. The party
> seeking an award of fees must submit evidence supporting the hours worked and
> the rates claimed. A district court should exclude from the lodestar amount hours
> that are not reasonably expended because they are "excessive, redundant, or
> otherwise unnecessary."

> Second, a court may adjust the lodestar upward or downward using a "multiplier"
> based on factors not subsumed in the initial calculation of the lodestar.
> The lodestar amount is presumptively the reasonable fee amount, and thus a
> multiplier may be used to adjust the lodestar amount upward or downward only in
> "rare" and 'exceptional' cases, supported by both 'specific evidence' on the
> record and detailed findings by the lower courts" that the lodestar amount is
> unreasonably low or unreasonably high.

*Van Gerwen*, 214 F.3d at 1045 (9th Cir. 2000) (internal citations omitted).

### i.    Reasonable Hourly Rate

In determining a reasonable hourly rate, a court determines what a lawyer of comparable

skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*,

465 U.S. 886, 895 n.11 (1984). The fee applicant has the burden of producing satisfactory

evidence, including affidavits from its counsel, demonstrating that the requested rates are in line

with rates prevailing in the community for similar services of lawyers of reasonably comparable

skill and reputation. *Id.*

Judges in the District of Oregon use the Oregon State Bar Economic Survey ("OSB

Economic Survey") as a benchmark for assessing the reasonableness of hourly rates. *See Bergen*

*v. Tualatin Hills Swim Club, Inc.*, 3:16-CV-00052-HZ, 2016 WL 2736105, at *3 (D. Or. May 11,

2016) (citing *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1086, 1089 (9th Cir.

2015)). The most recent OSB Economic Survey was published in 2017.[3] Further, courts adjust rates in the OSB Economic Survey for inflation using the United States Department of Labor's CPI Inflation Calculator.[4] *See S.G.W. v. Eugene Sch. Dist.*, 6:16-CV-01612-AA, 2017 WL 2365134, at *2 (D. Or. May 30, 2017).

The majority of the work performed in this case occurred from 2017 through 2021. Plaintiff's counsel seeks an award amount based on the current hourly rates of the six attorneys and one paralegal who worked on this case. Mot. Atty. Fees 3-6. All assert that their requested hourly rates are reasonable and consistent with the OSB Economic Survey. Decl. Arden J. Olson ("Olson Decl.") ¶ 8, ECF 90.

At the outset, two hourly rates are undisputed. Defendant does not dispute that Ms. Fullerton's requested hourly rate of $150 is reasonable. The Court agrees that an $150 hourly paralegal rate is reasonable according to the National Association of Legal Assistants' 2020 National Utilization and Compensation Survey Report. Thus, Ms. Fullerton's hourly rate is $150.

Additionally, Plaintiff's attorney Aaron Crockett only seeks an hourly rate of $290, *see* Pl.'s Mot. Attorney's Fees 6, while Defendant responds that the reasonable hourly rate for Mr. Crockett is $292.37, Def.'s Resp. Opp'n Mot. 3 ("[U]sing the same inflation adjustment, the average is $292.37, and the Court should apply that rate for Mr. Crockett."). The Court accepts Defendant's argument as a concession that Mr. Crockett's requested hourly rate is reasonable. Thus, Mr. Crockett's hourly rate is $290.

_____

[3] The OSB Economic Survey can be found at
https://www.osbar.org/_docs/resources/econsurveys/17economicsurvey.pdf.
[4] Consumer Price Index Inflation information is available at
https://www.bls.gov/data/inflation_calculator.htm.

### a.    Attorneys Olson, Rudnick, and Marmaduke

Plaintiff's lead counsel, Arden J. Olson, requests an hourly rate of $540. Olson Decl. ¶ 7.

He asserts that this is reasonable because he has been an attorney for over 43 years, has served as

an ERISA litigator since 1982, and has served as counsel on more than 15 federal ERISA cases,

including involvement as trial counsel in an ERISA case that ultimately resolved in the Supreme

Court. *Id.* ¶ 9.

Plaintiff's appellate counsel included Sharon A. Rudnick and Susan Marmaduke. Ms.

Rudnick requests an hourly rate of $550. *Id.* ¶ 7. Ms. Rudnick asserts that $550 is a reasonable

hourly rate because she has worked at the law firm for 39 years following a clerkship with the

Ninth Circuit, and she specializes in appellate advocacy as one of the most experienced appellate

advocates in Oregon, which includes work on a variety of ERISA cases before the Ninth Circuit

with some reaching the U.S. Supreme Court. *Id.* ¶ 10. Ms. Marmaduke requests an hourly rate of

$540, arguing that this rate is reasonable given that she has 35 years of appellate and business

litigation experience. *Id.* ¶ 11.

Defendant argues that the requested rates for Mr. Olson, Ms. Rudnick, and Ms.

Marmaduke are not consistent with the OSB Economic Survey. Def.'s Resp. 2. Instead,

Defendant argues that the appropriate hourly rate for all three attorneys is $451.15, which is the

average hourly rate for Portland attorneys with over 30 years' experience between 2017 through

2021 when adjusted for inflation. *Id.*

The Courts finds that Mr. Olson, Ms. Rudnick, and Ms. Marmaduke's requested hourly

rates are reasonable. First, despite Defendant's contention otherwise, Mr. Olson, Ms. Rudnick,

and Ms. Marmaduke are far from "average." All attorneys have a significant amount of

experience: Mr. Olson has practiced for over 40 years, while Ms. Rudnick and Ms. Marmaduke

have practiced for over 35 years. Moreover, all three attorneys have extensive expertise in their respective fields: Mr. Olson has been an ERISA litigator since 1982; Ms. Rudnick is recognized as among one of the most experienced appellate advocates in Oregon; and Ms. Marmaduke has practiced appellate litigation since 1987. *Id.* ¶¶ 9-11.

According to the 2017 OSB Economic Survey, in 2016 the average hourly rate for Portland attorneys in private practice with over 30 years of experience was $413. In the 75th and 95th percentiles, attorneys in that same category commanded between $495 to $610 respectively. When adjusting for inflation, attorneys with over 30 years of experience in private practice in Portland had the following hourly rates:

| Rates | 2017 | 2018 | 2019 | 2020 | 2021 |
|---|---|---|---|---|---|
| **Average** | $421.77 | $429.77 | $439.59 | $445.57 | $476.93 |
| **75th Percentile** | $505.44 | 515.09 | 526.87 | 534.04 | 571.62 |
| **95th Percentile** | $571.81 | $582.73 | $596.05 | $604.17 | $646.68 |

In sum, when adjusting for inflation, attorneys in the 75th percentile between 2017 and 2021 averaged an hourly rate $531, and attorneys in the 95th percentile between 2017 and 2021 averaged an hourly rate $600.

Based on their experience and demonstrated skill in ERISA and appellate litigation, Mr. Olson, Ms. Rudnick, and Ms. Marmaduke would receive an hourly rate closer to the 75th and 95th percentiles rather than the average for Portland attorneys in private practice with their years of experience. Accordingly, it is reasonable to place all three attorneys between the 75th and 95th percentile of attorneys practicing in Portland with over 30 years of experience. Thus, the Court finds that a $540 hourly rate for Mr. Olson, a $550 hourly rate for Ms. Rudnick, and a $540 hourly rate for Ms. Marmaduke is reasonable.

> **b.** **Attorney Landau**

Aaron Landau also served as Plaintiff's appellate counsel and requests an hourly rate of

$410. Olson Decl. ¶ 7. He had between 7-12 years of experience during the course of litigation,

has a practice with a focus on civil litigation appeals, has briefed and argued several ERISA

appeals before the Ninth Circuit, and has handled other appellate matters before the Oregon

appellate courts. *Id.* ¶ 12. Defendant argues that the appropriate hourly rate for Mr. Landau is

$309.14, which is the average rate for an attorney with between 7-9 and 10-12 years of

experience when adjusted for inflation.

As noted above, the majority of work performed on this case occurred from 2017 through

2021. Mr. Landau had between 8-12 years of the experience by the time that he worked on the

present case. According to the 2017 OSB Economic Survey, attorneys in private practice in

Portland commanded the following hourly rates in 2016:

| Years of Practice | Average Rate | 75th Percentile | 95th Percentile |
|---|---|---|---|
| 7-9 years | $282 | $340 | $400 |
| 10-12 years | $283 | $340 | $410 |

When adjusted for inflation, the rates based on Mr. Landau's years of experience adjust

as follows:

| Rates | 2017 (8 years of practice) | 2018 (9 years of practice) | 2019 (10 years of practice) | 2020 (11 years of practice) | 2021 (12 years of practice) |
|---|---|---|---|---|---|
| Average | $287.95 | $293.45 | $301.22 | $305.32 | $326.80 |
| 75th Percentile | $347.17 | $353.80 | $361.89 | $366.82 | $392.63 |
| 95th Percentile | $408.44 | $416.24 | $436.39 | $442.34 | $473.26 |

The Court finds that based on Mr. Landau's experience in ERISA and appellate litigation,

he commands an hourly rate above average. Although Mr. Landau seeks an hourly rate closer to

the 95th percentile average during the relevant years, which would be $432, the Court finds that,

based on his experience, Mr. Landau should receive around the 75th percentile of attorneys with similar years of experience. When accounting for inflation, the average hourly rate for Portland attorneys with 7-9 years of experience in the 75th percentile in 2017 and 2018 is $350. The average hourly rate for Portland attorneys with 10-12 years of experience in the 75th percentile from 2019-21 is $373.78. When averaging the two inflation-adjusted rates, the average hourly rate is $362. Thus, the Court finds that the average hourly rate of $362 is appropriate in light of Mr. Landau's handling of the case.

### c.      Attorney Julian Marrs

Julian Marrs also served as Plaintiff's counsel and requests an hourly rate of $305. Pl.'s Mot. Atty's Fees 6. Mr. Marrs joined the firm in 2019 and argues that his requested hourly rate is reasonable given that he has been admitted to practice in Oregon since 2015, he served a one-year clerkship with the Alaska Supreme Court before entering private practice, he is also barred in California, and he has a practice focusing on trial litigation and commercial arbitrations. Olson Decl. ¶ 14. Defendant counters that Mr. Marrs' hourly rate should be $272, which is the inflation-adjusted average hourly rate for attorneys with 4-6 years' experience between 2019 and 2021. Def.'s Resp. 3.

According to the OSB Economic Survey, a Portland attorney with 4-6 years of experience had an average hourly rate of $249 in 2016.  When adjusted for inflation, a Portland attorney with 4-6 years of experience from 2019 through 2021 charged the following:

| Rates | 2019 | 2020 | 2021 |
|---|---|---|---|
| Average Rate | $265.03 | $268.64 | $287.54 |
| 75th Percentile | $319.31 | $323.66 | $346.44 |
| 95th Percentile | $372.54 | $377.60 | $404.17 |

Mr. Marrs' requested hourly rate of $305 is reasonable. Although Defendant counters that a reasonable hourly rate would be an average rate, the Court finds Mr. Marrs commands an above average rate. Mr. Marrs has two active licenses in both Oregon and California, clerked at the Alaska Supreme Court before joining private practice, and has a trial litigation practice. During the relevant years and when adjusted for inflation, an attorney in the 75th percentile had an average hourly rate of $329.80 between 2019 and 2021. Mr. Marrs' requested rate of $305 falls in between the average and 75th percentile. Thus, Mr. Marrs' hourly rate is $305.

ii.    Hours Reasonably Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case was "reasonably necessary" to the litigation and that counsel made "a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]" *Hensley*, 461 U.S. at 434; *see also Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("Plaintiffs bear the burden of showing the time spent and that it was reasonably necessary to the successful prosecution of their [ ] claims.").

Plaintiff seeks compensation for a total of 1288 hours of work from all attorneys and the paralegal involved in this matter for both the District Court proceedings and the Ninth Circuit proceedings. *See* Second Suppl. Declaration of Arden J. Olson ("Second Suppl. Olson Decl.") Ex. 8 at 3-14, ECF 100 (seeking 846.70 hours for work performed during trial proceedings); *id.* at 15-19 (seeking 383.80 hours for work performed during appellate proceedings); Second Suppl. Olson Decl. Ex. 9 at 1-3 (seeking 57.5 hours for work performed on the present motions).

In Plaintiff's motion and accompanying declarations, however, Plaintiff only provided a total number of hours spent on the case and has failed to set forth how many hours each attorney and paralegal spent on the case. Given the lack of information provided from counsel, the Court

used the exhibits of the total hours to calculate how many hours each attorney and paralegal

spent on the case:

| Attorney | Hours Expended |
|---|---|
| Arden J. Olson | 553.9 |
| Aaron Crockett | 193.8 |
| Ginger Fullerton | 32.40 |
| Julian Marrs | 16.1 |
| Aaron Landau | 291.5 |
| Sharon A. Rudnick | 177.7 |
| Susan Marmaduke | 22.60 |
| | **Total Hours: 1288** |

In response, Defendant argues that the number of hours requested should be significantly

reduced because a variety of excesses are included in Plaintiff's fee request. Def.'s Resp. Opp'n

3-9. Defendant argues that Plaintiff's fee award should be reduced for various reasons: Ms.

Fullerton's clerical work should not be included in the award; Plaintiff's counsel spent excessive

and duplicative time on certain aspects of the case; the complexity of the case does not warrant

the requested hours billed; and the fee claim exceeds the damages at issue. *Id.* Defendant's

proposed reasonable amount of attorney fees is $194,392.26, which is based on 502.4

compensable hours. Def.'s Resp. Opp'n 8-9. In coming to this calculation, Defendant started

with the 677.80 hours that Defendant's counsel spent on this case and subtracted for hours that

Defendant purports should not be provided for. *Id.* The Court begins its analysis with

Defendant's specific objections to the attorney fee award.

### a.    Ms. Fullerton's Time

Defendant argues that Ms. Fullerton's time spent on clerical, administrative work should not be included in the award because Plaintiff failed to offer any explanation why the work required a paralegal. Ms. Fullerton billed 32.4 hours on this matter, which included reviewing medical records, preparing medical record releases, making phone calls and sending emails about the case, finalizing motions in preparation of filing, and drafting and revising attorney fees timesheets. Declaration of Robert B. Miller ("Miller Decl.") Ex. 14. Courts have observed that "clerical tasks are not properly billed as attorney fees but are overhead expenses absorbed by counsel." *Yox v. Providence Health Plan*, 3:12-CV-01348-HZ, 2014 WL 3478566, at *4 (D. Or. July 11, 2014); *see Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them. . . .). In total, Ms. Fullerton spent approximately 12.9 hours on tasks that are clerical in nature. Accordingly, the Court reduces Ms. Fullerton's time by 12.9 hours and allows for 19.5 hours total from Ms. Fullerton.

### b.    Excessive and Duplicative Time

Defendant next contends that Plaintiff's attorneys' administration of the case resulted in redundancies, which caused excessive and unnecessary time billed that should be excluded from the fee award. Defendant argues that Plaintiff's counsel spent excessive time on certain aspects of the case: (1) Plaintiff's counsel collectively billed 881.7 hours from the date the Complaint was filed through Judgment for Defendant; (2) Plaintiff's counsel billed 395.60 hours on the appeal through December 31, 2021; (3) Mr. Olson and Mr. Crockett billed 24.7 hours drafting the Complaint; (4) counsel spent 32.7 hours developing a memorandum of Defendant's claims history; (5) counsel spent 45.6 hours researching and preparing for discovery; (6) Plaintiff, her

husband Mr. Crockett, and Mr. Gary, spent 14.1 hours in interoffice communications; (7) counsel spent 33.1 hours drafting the November 30, 2017, Motion for Partial Summary Judgment; (8) counsel spent 16.2 hours on the November 21, 2019, Motion to Seal; (9) counsel spent 58.2 hours on the Motion to Expand the Record and 26.1 hours on the reply; and (10) Mr. Marrs unnecessarily billed 15.6 hours in February 2019.

First, Mr. Olson's time should be reduced based on the extensive familiarly gained in his hours spent on the administrative appeal. Def. Opp'n at 6. From the date the Complaint was filed through judgment for Defendant, Mr. Olson spent 451.5 hours on the case, which occurred after spending 16.5 hours reviewing the claim file and 84.1 hours drafting the administrative appeal. Additionally, Plaintiff's remaining attorneys and paralegal also spent 430.2 hours during that same time, which results in Plaintiff's counsel spending 881.7 hours during the relevant period. In contrast, Defense counsel billed a total of 455.9 hours from the date the Complaint was filed through judgment for the Defendant. Simply put, Plaintiff's counsel spent nearly double the time that defense counsel spent during at the same time. The Court finds this time to be excessive as Plaintiff's counsel consisted of experienced ERISA litigators. The Court reduces Mr. Olson's time spent by 100.6 hours to account for his experience and familiarity of the case before drafting the Complaint.

Second, the Court agrees with Defendant that the time spent handling the appeal in this case was excessive. Though it was reasonable for Plaintiff's counsel to recruit appellate counsel to assist with the appeal before the Ninth Circuit, it was not reasonable to seek fees for the time of four different attorneys—particularly in light of the lack of supporting evidence from Plaintiff

that the appeal was of a complexity that required this kind of staffing.[5] Accordingly, the Court

disallows 24.1 hours related to the work of third experienced appellate attorney Ms. Marmaduke.

*See* Second Suppl. Olson Decl. Ex. 8 at 17–18 (22.6 hours billed by Ms. Marmaduke; 1.5 hours

billed by Ms. Rudnick for conference with Ms. Marmaduke). The Court also disallows much of

the time trial counsel—Mr. Olson—billed for the appeal. Though a certain degree of

involvement by trial counsel is reasonable, Mr. Olson has billed for 33.5 hours of time that

includes, among other things, studying the briefs, preparing memorandums for Ms. Rudnick, and

preparing an "analysis of Unum arguments." *Id.* Many of these tasks either should have been or

were also performed by Mr. Landau at a lower rate. There is also a significant amount of

duplicative billing between Mr. Olson and the two primary appellate attorneys on the case,

including time spent editing briefs, meeting to discuss strategy, and conferencing before and

after oral argument. *Id.* As such, the Court reduces the hours spent by Plaintiff's counsel on

appeal by a total of 57.6 hours.

       Third, the Court agrees with Defendant that the time spent drafting the Complaint was

excessive for experienced ERISA counsel given the factual history of the case. Mr. Olson and

Mr. Crockett collectively spent 24.7 hours drafting the complaint: Mr. Olson spent 19.4 hours,

while Mr. Crockett spent 5.30 hours. Given Mr. Olson's extensive familiarly with the case after

spending 88.4 hours on the administrative appeal, the Court agrees that 24.7 hours to draft a

complaint is excessive. Accordingly, Mr. Olson's time spent drafting the Complaint is reduced

---

[5] The Court also notes that the record and briefing on appeal were filed under seal, and Plaintiff
has not provided any evidence of the length or substance of the record or the briefing on appeal,
how it was different from the issues already presented to the trial court, or whether these issues
were particularly novel or complex. Further, Plaintiff spent nearly twice as much time on the
appeal as Defendant, seeking fees for nearly 400 hours of work.

by 14.4 hours to a total of 5 hours, and Mr. Crockett's time is reduced by 2.3 hours to a total 3

hours. The Court therefore allows 8 hours collectively in drafting the Complaint.

Fourth, the Court also finds the 32.7 hours developing a memorandum about Defendant's

claims history memorandum was excessive. Mr. Crockett spent 32.7 hours preparing such

memorandum in support of its Motion to Expand the Record and to Adopt a De Novo Standard

of Review. ECF 36-1. As the Court reflected in its September 6, 2018, Opinion and Order,

"[n]one of these case citations [were] particularly relevant other than to show that Defendant's

benefits decisions have been both affirmed and reversed over the course of many years."

September 6, 2018, Opinion & Order at 19, ECF 45.  Then, the Court noted that Judge

Ashmanskas explained in a 2008 decision that a providing such a string citation to a defendant's

past claim adjudications is not relevant without a direct link between the cases. *Id.* (citing

*Baldoni v. UNUMProvident*, No. 03-1381-AS, 2008 WL 140716, at *5 (D. Or. Jan. 9, 2008)).

Plaintiff replies that a reduction of time in this instance is inappropriate because the Court should

not deduct time Plaintiff's counsel spent in crafting arguments that turned out to be unsuccessful.

Pl.'s Reply 7.  However, in light of case law from this district explaining that such an argument

is irrelevant without a direct link being made between the cases cited and the present case, which

Plaintiff's counsel similarly failed to do here, such an argument had already been deemed

unsuccessful.  Thus, Mr. Crockett's time expended on Defendant's claims history memorandum

was unnecessary and excessive, and Mr. Crockett's time is reduced by 32.7 hours.

Fifth, time spent researching and preparing discovery was similarly excessive. Mr. Olson

and Mr. Crockett collectively spent 45.7 hours researching whether to conduct discovery in this

case: Mr. Olson spent .10 hour, and Mr. Crocket spent 45.6 hours. Plaintiff does not dispute that

discovery did not occur in this case but responds that "evaluating the need for discovery was one

of the more important decisions counsel had to make." *Id.* The Court finds that the total 45.6 spent researching whether discovery should occur was excessive given that Plaintiff did not engage in discovery in this case. Mr. Crockett's time spent researching discovery is reduced by 25.6 hours to 20 hours. The Court allows 20.1 hours total in researching whether discovery was appropriate in this case.

Sixth, the Court does not find 14.1 hours of interoffice communication excessive. Defendant contends, without citing any authority for its proposition, that 14.1 hours of interoffice communications between Plaintiff, Mr. Crockett, who is Plaintiff's husband, and William Gary, the firm's shareholder, are inappropriate for a fee award because they all share a familial interest in the case. However, interoffice communications are appropriate for fee awards, and the Court does not find the 14.1 hours spent to either be excessive or inordinate. *See Mogck v. Unum*, 289 F. Supp. 2d. 1181, 1194 (S.D. Cal. 2003).

Seventh, the time spent drafting and editing the Partial Motion for Summary Judgment and Reply was not excessive. Mr. Olson and Mr. Crockett collectively spent 33.1 hours total drafting the motion, drafting the reply, and performing research and edits related to the filing of briefs. The Court finds the 33.1 hours spent on the motion was adequate and not excessive.

Eighth, Plaintiff's counsel spent 16.2 hours preparing the February 21, 2018, Motion to Seal and its reply. The Court does not find this time excessive. Ninth, Plaintiff's counsel collectively spent 58.2 hours drafting and preparing the Motion to Expand the Record and 26.1 hours on the reply. The motion was a 30-page motion, and the reply was a 36-page motion. Despite Defendant's arguments to the contrary, the Court does not find this time to be excessive.

Finally, the Court finds that Mr. Marrs' time spent in February 2019 was excessive as it was duplicative and unnecessary time billed. In February 2019, Mr. Marrs spent 15.6 hours

reviewing past filings from the case, performing technical edits on the reply for the motion for

summary judgment, and conducting research on prejudgment interest rates in ERISA cases.

Given the time expended by other counsel on the motion for summary judgment and the nature

of the time billed, the Court finds these entries duplicative and unnecessary. The Court does not

find Mr. Marrs' 0.5 hour spent reviewing the December 21, 2021, Opinion & Order, however, to

be duplicative or unnecessary. Accordingly, Mr. Marrs' time is reduced by 15.6 hours.

### c.    Complexity of the Case and Fee Claim Exceeding Damages

Finally, Defendant argues that (1) the complexity of the case and (2) the damages at issue

do not warrant the requested hours billed. First, Defendant contends that Plaintiff's EDS

diagnosis and the amount of the monthly benefit did not have any effect on the complexity of the

case, and the length of the judgment was not unusual. *Id.* at 4. The Court is unpersuaded that the

complexity of the case demonstrates that requested hours billed should be reduced. Rather, as

described above, the Court has reduced the amount of fees that it has found to be duplicative or

unnecessary in light of the complexity of the case and work performed.

Second, Defendant cites to *Taylor v. Albina Cmty. Bank*, 2002 WL 31973738, at *5 (D.

Or. Oct. 2, 2002), for the proposition that the hours billed should be reduced because the fees

requested exceed the damages at issue, which would suggest that Plaintiff's counsel did not

attempt to contain the amount of fees charged and sought an award for excessive time. Def.'s

Opp'n 5. The Court agrees with Defendant that it appears Plaintiff's counsel did not contain the

amount of fees charged. As the court in *Taylor* noted, "[l]itigation is expensive, but the losing

party is required to pay only a reasonable amount of attorney fees, not the actual amount incurred

by the prevailing party who makes no or a minimal effort to contain costs." *Taylor v. Albina

Cmty. Bank*, CV-00-1089-ST, 2002 WL 31973738, at *5 (D. Or. Oct. 2, 2002). Although this

case has spanned five years, including an appeal before the Ninth Circuit, Plaintiff's counsel is

seeking $569,703.50 before the requested multiplier, which would total $683,644.20. To

contrast, Plaintiff's judgment totaled only $431,647.76 in past benefits including interest. Final

Judgment, ECF 88.  In light of the disparity between the damages and proposed fee award, the

Court believes that a 10% reduction in Plaintiff's requested attorney's fees is appropriate.

iii.    Multiplier

After a Court has calculated the lodestar amount, "[t]here remain other considerations

that may lead the district court to adjust the feed upward or downward." *Hensley*, 461 U.S. at

434. Eleven other factors remain relevant to the determination of the total amount of attorney's

fees: (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill

requisite to perform the legal service properly; (4) the preclusion of employment by the attorney

due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or

the circumstances; (7) the amount involved and the results obtained; (8) the experience,

reputation and ability of the attorneys; (9) the "undesirability" of the case; (10) the nature and

length of the professional relationship with the client; and (11) awards in similar cases." *Van

Gerwen*, 214 F.3d at 1045 n.2 (citing *Hensley*, 461 U.S. at 430 n.3). "Further, the Supreme Court

has held that novelty or complexity of the issues should not be considered at the multiplier stage,

and that quality of representation and results obtained are ordinarily subsumed in the lodestar

determination and in most cases should not be considered in the multiplier step." *Van Gerwen*,

214 F.3d at 1045 at n.2 (citing *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984)).

Plaintiff argues that the fee award should be increased by a 1.2 multiplier because of the

nature of the results obtained. Mot. Att'y Fees 9-10. Plaintiff bases this request on the fact that

this case concerned long-term disability benefits, so Judgment in Plaintiff's favor constituted an

"extraordinary victory." *Id.* (citing *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 699 (9th Cir. 1996); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 644 F. Supp. 551, 560 (D. Md. 1986)).

An enhanced award is neither appropriate nor justified in this case. Although Plaintiff's counsel was successful in obtaining benefits for Plaintiff, the extensive fee award does not justify a further enhanced award. As such, the Court declines Plaintiff's invitation to apply any multiplier to Plaintiff's lodestar fee award amount.

iii.   Lodestar Attorney Fee Amount

In sum, in light of the foregoing above, the Court concludes that Plaintiff is entitled to the following calculation of attorney's fees:

| Name | Hourly Rate | Hours Billed | Deducted Hours | Total Hours | Total Amount |
|---|---|---|---|---|---|
| Arden J. Olson | $540 | 553.9 | - 148.5 | 405.4 | $218,916 |
| Sharon A. Rudnick | $550 | 177.7 | - 1.5 | 176.2 | $96,910 |
| Susan Marmaduke | $540 | 22.6 | - 22.6 | 0 | $0 |
| Aaron Landau | $362 | 291.5 | 0 | 291.5 | $105,523 |
| Aaron Crockett | $290 | 193.8 | - 60.6 | 133.2 | $38,628 |
| Julian Marrs | $305 | 16.1 | - 15.6 | 0.5 | $152.50 |
| Ginger Fullerton | $150 | 32.4 | -12.9 | 19.5 | $2,925 |

**Fees Provided: $463,054.50**
**Minus 10% Reduction: -$46,305.45**
**Total Lodestar Amount: $416,749.05**

## III.   Bill of Costs

Under Federal Rule of Civil Procedure 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "By its terms, the rule creates a presumption in favor of awarding costs to the prevailing party." *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir.

2000). Plaintiff has filed a Bill of Costs, seeking $171.00 in costs as shown on Mandate from the Court of Appeals. Bill of Costs, ECF 91. Defendant did not file any response in opposition to Plaintiff's Bill of Costs. Thus, the Court grants Plaintiff's Bill of Costs.

<b>CONCLUSION</b>

Plaintiff's Motion for Attorney's Fees [89] is GRANTED in part, and Plaintiff's Bill of Costs [91] is GRANTED.  Plaintiff is awarded $416,749.05 in attorney's fees and $171.00 in costs.

IT IS SO ORDERED.

DATED:___ January 17, 2023_____

_____
MARCO A. HERNÁNDEZ
United States District Judge